Roosevelt HARRIS, Plaintiff–Appellant,

v.

HARRIS & HART, INC., a Utah
Corporation, Defendant–
Appellee.

No. 98–35949.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1999

Filed March 13, 2000

Paul L. Breed, Portland, Oregon, for
plaintiff-appellant Roosevelt Harris.

Barry N. Johnson, Daniel L. Steele,
Bennett, Tueller, Johnson & Deere, Salt
Lake City, Utah, for defendant-appellee
Harris & Hart, Inc.

Before: KLEINFELD and W.
FLETCHER, Circuit Judges, and
MANELLA, District Judge.[1]

1.  Honorable Nora Manella, United States District Judge for the Central District of California, sitting by designation.

MANELLA, District Judge:

# I

## INTRODUCTION

Plaintiff-appellant Roosevelt Harris ("Harris") sued defendant-appellee Harris & Hart ("H&H"), alleging that defendant violated his rights under the Americans with Disabilities Act when it requested that plaintiff provide a medical release before returning to work. Defendant, a qualified federal government contractor, is in the business of manufacturing and installing heating, ventilating, and air conditioning systems. Defendant hires journeymen from a union hall on a project-by-project basis. Plaintiff, a journeyman sheet metal worker, had worked for defendant on two separate occasions for approximately three months each time. During his second term working for defendant, plaintiff informed defendant that he suffered from carpal tunnel syndrome and filed a grievance with his union concerning defendant's failure to adequately accommodate his disability.

Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The district court, Hon. Robert B. Jones presiding, granted defendant's motion for summary judgment on the ground that defendant's unwillingness to rehire plaintiff without a medical release did not violate the Americans with Disabilities Act ("ADA"). Plaintiff now appeals the district court's order. Whether an employer may require a medical release of a former employee before rehiring him or her is an issue of first impression in this circuit.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant, a qualified federal government contractor, is in the business of manufacturing and installing heating, ventilating, and air conditioning systems. Defendant regularly hires journeymen through the Sheet Metal Workers International Association, Local Union No. 16. Plaintiff is a member of Local Union No. 16 and procures work from the union hall. The union hiring hall is operated according to the terms of a collective bargaining agreement ("CBA") between defendant and the union. Under the terms of the CBA, defendant is to hire sheet metal workers exclusively from the hall. The local union, in turn, must provide "qualified" applicants who are "available for work" for employment with defendant upon defendant's request.

Defendant depends on the union hiring hall to provide qualified sheet metal workers on an as-needed basis. Defendant's need for labor fluctuates from project to project, and a sheet metal worker remains in defendant's employ only to the extent that labor is needed, often for only a few days or weeks. When defendant no longer needs the worker, the worker is laid off.

Once laid off, if the worker desires more work, he or she must return to the hiring hall and place his or her name on the out-of-work list. Sheet metal workers are dispatched from the top of the list to the next requesting employer. Neither workers nor employers have an expectation that a worker will be dispatched to an employer he or she has worked for before, nor is there any preference for hiring based on past experiences with an employer. If a worker is dispatched to a former employer, it is either by random selection or because the employer specifically has requested that worker. The parties agree that a worker is not considered an employee of defendant until defendant has agreed to hire the worker after he or she has been dispatched from the union hall.

Plaintiff worked for defendant on two separate occasions: first from October 14, 1994 to January 18, 1995; and again from September 29, 1995 to January 5, 1996. During this second work term, defendant gave plaintiff a copy of its New Employee Safety Indoctrination Manual (herein "the

Manual"), including defendant's Injury/Illness Prevention Program. Among other things, the Manual provides:

> No employee will be allowed to return to work at any jobsite unless they first bring an original medical release from the Doctor who treated them. These releases are to be sent to the Workers Compensation Coordinator. If the medical release is conditional in any way (i.e. "light duty" is written on the release) then the employee must receive personal permission from the Division or Area Manager in order to return to work.

Plaintiff acknowledged in writing that he received, read, understood, and would comply with defendant's safety manual.

On December 21, 1995, in the course of his second term of employment with defendant, plaintiff complained to his union that he had carpal tunnel syndrome, and that defendant had failed to accommodate his disability. In his written grievance, plaintiff stated:

> I, Roosevelt W. Harris II was employed by Harris & Hart Inc. on Sept. of 95 as a sheet metal worker. On or about October 10, 1995, I stated to sheet metal foreman Brain that I had carpal tunnel in both hands. He ask me what I could do. Employee stated back to him what he could and should not do.... On November 13, 1995, I went to my doctor for both my hands was in pain. Dr. Reynolds return me back to work with a physical capabilities form. Paper work was given to foreman Brain, to give to Superintendent, Clart Harris.

In response to plaintiff's grievance concerning inadequate accommodation of his disability, union representative Donald Bosch wrote defendant about plaintiff's carpal tunnel syndrome. In a letter dated January 2, 1996, Bosch stated that plaintiff's syndrome limited only two job functions: 1) continual hammering for more than two hours; and 2) using an air hammer to hammer duct together "in any way,

shape or form." Plaintiff signed the letter written by Bosch, certifying his agreement with its contents. On January 5, 1996, plaintiff resigned his job with defendant.

Less than two weeks later, on January 17, 1996, the union hiring hall again dispatched plaintiff for a job with defendant. Consistent with the requirements set out in the Manual, defendant requested that plaintiff provide a medical release before returning to work. Plaintiff refused to provide a medical release, and defendant denied him employment.

Plaintiff immediately filed a grievance with the union relating to defendant's refusal to hire him. The parties settled the grievance on February 26, 1996, when they entered into a Confidential Separation Agreement. Among other conditions, defendant agreed to pay plaintiff $1,159.60. Plaintiff warranted that he had not filed and agreed not to file in the future any claims arising out of his relationship with defendant. The agreement also stated that it did not preclude plaintiff from being hired by defendant in the future if the need arose for plaintiff's services, and "plaintiff is qualified and physically able to perform available work."

On January 23, 1997, the union again dispatched plaintiff to work for defendant as a sheet metal journeyman. As before, defendant asked for a medical release. Plaintiff again refused to provide the requested release, and defendant again denied plaintiff employment. On January 24, 1997, plaintiff filed a grievance. He then filed complaints with the U.S. Department of Labor and the Oregon Bureau of Labor and Industries ("BOLI").[2] In September 1997, he filed a complaint in state court. On October 20, 1997, defendant removed the case to federal court.

Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On September 15, 1998, the district court granted defendant's motion for summary judgment on

---

**2.** Plaintiff's complaint with the Department of Labor was dismissed.

the ground that defendant's unwillingness to rehire plaintiff without a medical release did not violate the Americans with Disabilities Act. Plaintiff now appeals the district court's order.

## III

### DISCUSSION

#### A

##### *Standard of Review*

The standard of review of a grant of summary judgment is *de novo. See Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Summary judgment may be granted when, viewing the evidence in the light most favorable to the non-moving party, no genuine issues of fact remain, and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be entered against a party who fails to present evidence sufficient to establish an essential element of that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

#### B

##### *Application*

The only issue in this case is whether defendant's refusal on January 23, 1997 to rehire plaintiff without a medical release constituted an illegal pre-offer medical inquiry under the ADA. Specifically, the district court found defendant's requirement of a medical release to be an appropriate pre-offer inquiry of a former employee with a known disability, that did not run afoul of the ADA.

The Americans with Disabilities Act was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b).

Within the context of employment discrimination, the ADA provides: "(a) *General rule.* No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). This statute requires individuals with disabilities to be given the same consideration for employment as individuals without disabilities. An individual who is qualified for an employment opportunity cannot be denied that opportunity because the individual is disabled. *See Interpretive Guidance on Title I of the Americans with Disabilities Act,* 29 C.F.R. pt. 1630, App., § 1630.1(a) Purpose ("Guidance on Title I").

With regard to an employer's request for medical examinations and inquiries, the ADA sets up separate rules for pre-offer job applications (§ 12112(d)(2)), post-offer pre-employment examinations (§ 12112(d)(3)), and inquiries of current employees (§ 12112(d)(4)). Plaintiff alleges a violation of § 12112(d)(2)(A), which applies to pre-offer job applications and provides:

> Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.

The rationale behind the prohibition is that "[i]ndividuals with disabilities must be allowed a fair opportunity to be judged on their qualifications, 'to get past that initial barrier' where an employment judgment might be unfairly made based on disabilities rather than abilities." *Id.* 135 Cong. Rec. § 10,768 (daily ed. Sept. 7, 1989) (statement of Sen. Harkin).

In this case, the district court identified three exceptions to the ADA's general rule barring pre-offer medical inquires: 1)

when pre-employment inquires relate to the ability of an applicant to perform job-related functions, Section 12112(d)(2)(B); 2) when an employer could reasonably believe that an applicant's known disability will interfere with the performance of a job-related function;[3] and 3) when an applicant requests reasonable accommodation for the application process or for the job.[4] The first exception is outlined in the statute itself. Section 12112(d)(2)(B) creates an exception for acceptable medical inquiries: "[a] covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions."[5]

The second and third exceptions are outlined in *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667 (1st Cir.1995). Affirming the district court's grant of summary judgment in favor of the employer, the First Circuit held that an employer may make medical inquiries of a former employee with a known disability when the employee applies for re-employment with the same employer. *Id.* at 677. The plaintiff in *Grenier* worked for Cyanamid and was placed on indefinite disability leave due to psychological problems. A year and a half after his employment officially terminated due to the expiration of disability leave, Grenier sought reinstatement to his previous position. *Id.* at 670. Cyanamid requested a certification from his treating psychiatrist to determine whether plaintiff had recovered. The court deemed the request a medical inquiry rather than an exam, because the request did not necessitate new tests or procedures. *Id.* at 676. Relying on the EEOC's interpretation of the ADA regulations as outlined in the *Guidance on Title I* and the *EEOC Guide* cited above, the court noted, "the ADA does not preclude an employer from asking an applicant with a known disability who seeks a reasonable accommodation to specify the type of accommodation he seeks." *Id.* at 677. "The central purpose of the prohibition on pre-offer inquiries generally is to ensure that an applicant's hidden disability remains hidden.... With respect to known disabilities, however, the emphasis is on encouraging the employer to 'engage in an interactive process with the individual to determine an effective reasonable accommodation.'" *Id.* (*citing Guidance on Title I* § IV. B.6. b.). The court noted, "[t]he ADA does not require an employer to wear blinders to a known disability at the pre-offer stage, but permits an 'interactive process' beneficial to both the employer and applicant." *Id.* at 675. The court concluded that "an em-

---

**3.** 29 C.F.R. § 1630.14(a) (Guidance on Title I)("an employer may also ask an applicant to describe or to demonstrate how, with or without reasonable accommodation, the applicant will be able to perform job-related functions"); *see also Equal Employment Opportunity Comm'n, Enforcement Guidance: Preemployment Disability–Related Inquiries and Medical Examination Under the Americans with Disabilities Act of 1990* (EEOC Notice 915.002) ("EEOC Guide") § IV.B.5.b (when an employer could reasonably believe that an applicant's known disability will interfere with the performance of a job-related function, the employer may ask that particular applicant to describe or demonstrate how s/he would perform the function, with or without reasonable accommodation); *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 673 (1st Cir.1995) (*citing* the EEOC Guide; "ADA does not require an employer to wear blinders to a known disability at the pre-offer stage").

**4.** *EEOC Guide* § IV.B.6.b (when an applicant requests reasonable accommodation, an employer may request documentation from an appropriate professional); *Grenier,* 70 F.3d at 674.

**5.** The EEOC has interpreted this exception narrowly, noting that although employers are permitted to make pre-employment inquiries into the ability of an applicant to perform job-related functions, the inquiry must be narrowly tailored. *Guidance on Title I,* 29 C.F.R. Pt. 1630, App. § 1630.14(a). For example "[t]he employer may describe or demonstrate the job function and inquire whether or not the applicant can perform that function with or without reasonable accommodation." *Id.* As plaintiff's affidavit attests, he understood defendant to be requiring him to provide "a release from my doctor certifying that I was capable of performing the essential functions of a sheet metal worker."

ployer does not violate § 12112(d)(2) of the ADA by requiring a former employee with a recent known disability applying for re-employment to provide medical certification as to ability to work with or without reasonable accommodation, and as to the type of any reasonable accommodation necessary, as long as it is relevant to the assessment of ability to perform essential job functions." *Id.* at 678.[6]

■ As in *Grenier*, the court below found that defendant's request for a medical release was a medical inquiry, rather than a medical examination, because a release from plaintiff's treating physician did not appear to require new tests or procedures. *Grenier*, 70 F.3d at 676. ("[A]n employer may request that an applicant provide medical certification from doctors of ability to perform so long as the inquiry does not otherwise run afoul of § 12112(d)(2)(A).").  Defendant's Manual required a medical release from an injured worker's treating doctor, stating whether the worker should be restricted to "light duty" or any other limitations owing to injury or sustained disability. Defendant's required medical release is more akin to a progress report from a specialist treating a particular injury, than a comprehensive evaluation from a general practitioner testing a worker for physical or mental impairments.  While plaintiff challenges this finding on appeal, the district court's conclusion that defendant's requirement of a

medical release was an "inquiry," rather than an "examination" is supported by the record.[7]

■ The court below went on to conclude that plaintiff was a former employee with a known disability, and that the ADA did not prohibit defendant from making inquiries to determine what accommodations, if any, would be necessary.  The court found the reasoning of the First Circuit in *Grenier* to be "persuasive and particularly applicable to the facts of this case."

Although plaintiff claims "defendant did not 'know' that plaintiff suffered from a disability" but only "suspected" it, the record demonstrates otherwise. While working for defendant in December 1995, plaintiff informed defendant of his disability both orally and in writing.  In his grievance form dated December 21, 1995, plaintiff wrote that he had "stated to sheet metal foreman Brain that I had carpal tunnel in both hands."  In this form, plaintiff also stated he had told defendant's foreman what he could and could not do, given his condition, and had completed paperwork concerning his disability to be forwarded to defendant's superintendent.  More importantly, plaintiff signed a letter, written by union representative Bosch, specifically noting that plaintiff suffered from carpal tunnel syndrome and outlining his physical limitations.  There is no question that plaintiff, of his own accord, in-

---

**6.** A similar result was reached by the Eighth Circuit in *Brumley v. Pena*, 62 F.3d 277 (8th Cir.1995) under the Rehabilitation Act. There, the plaintiff was employed by the FAA and left his employment after suffering severe depression.  He received disability retirement payments until 1987, at which time, while still receiving retirement benefits, he requested priority consideration for restoration to duty. *Id.* at 277–78.  To receive priority consideration, the FAA first had to determine whether the plaintiff was partially or fully recovered from his disability (fully recovered employees were entitled to priority consideration; partially recovered employees were not). *Id.* at 278.  The FAA informed the plaintiff that he would have to submit to a psychological exam to enable the agency to determine whether he

was entitled to priority consideration. *Id.* The court held that the FAA could require a medical examination to determine the plaintiff's level of recovery. *Id.* at 279.  The court stated that while the Rehabilitation Act prohibits employers from requiring pre-employment physical examinations, the plaintiff was not an outside job applicant seeking employment for the first time, but was instead seeking re-employment. *Id.*

**7.** As noted above, it is undisputed that plaintiff understood defendant to be requiring not a general medical examination and evaluation, but rather certification that he was "capable of performing the essential functions of a sheet metal worker."

formed defendant of his disability. By seeking a medical release from plaintiff's treating physician before allowing him to return to work on a new project, defendant was seeking information about a known, rather than a hidden disability.[8]

Plaintiff strives to cast himself as an applicant with no known disability, who presented himself "ready, able, and willing" to perform the essential functions of the job. Plaintiff notes that the CBA requires the union to send out only those who are "ready, able, and willing" to perform the jobs requested. It is undisputed, however, that a mere 12 days after plaintiff resigned over defendant's alleged failure to accommodate his carpal tunnel syndrome, the union again sent him to work for defendant. Defendant had no reason to believe plaintiff's condition had cured itself, and no reason a year later to believe that the union's decision to send him out constituted a guarantee of his fitness to perform the essential functions of a sheet metal worker. In short, defendant knew of plaintiff's disability, knew the union had sent him out even while suffering from it, and had no evidence that he had recovered.

Moreover, plaintiff was an applicant who had previously requested accommodations from defendant. On December 21, 1995 while working for defendant, plaintiff filed a grievance alleging that defendant had failed adequately to accommodate his disability, and in early January, sent defendant a letter informing defendant of plaintiff's need for job specific accommodations. The January 2, 1996 letter from union representative Bosch outlined two job functions plaintiff could not perform, namely, continuous hammering and using an air hammer. Plaintiff requested these accommodations while working for defendant as a journeyman sheet metal worker. Twelve days later, on January 17, 1996,

plaintiff again applied for a position with defendant as a journeyman sheet metal worker. Given that plaintiff had previously requested accommodation of his disability for the same position, defendant was not prohibited from requesting documentation from an appropriate medical professional concerning plaintiff's condition. See EEOC Guide § IV.B.6.b; Grenier, 70 F.3d at 674. As the district court aptly noted, to accept plaintiff's position "would be to force defendant to have 'amnesia' with respect to plaintiff's carpal tunnel problems, a requirement this court is unwilling to impose on the employer in the circumstances presented here." In short, being on notice of plaintiff's disability, it was both logical and legal for the employer to attempt to determine what accommodation, if any, would be required, and to request a medical release from the applicant's treating physician. Grenier, 70 F.3d at 677.

Finally, as appellee notes, had plaintiff been an injured employee returning to work, there is no question that under the ADA defendant would have been permitted to require a medical examination to determine his fitness to perform essential job functions. Yin v. State of California, 95 F.3d 864 (9th Cir.1996); Porter v. United States Alumoweld Co., 125 F.3d 243 (4th Cir.1997). Common sense dictates similar treatment of former employees with known disabilities. The Grenier court reasoned as follows:

> We agree that this case is similar to that of an employee returning from disability leave. It appears that neither congress nor the EEOC took into account the case of a returning employee, when formulating the restrictions on pre-offer inquiries. Here, as in the case of the returning employee, the employer must be able to assess the extent of the applicant's recovery from inability to perform. Further, if accommodations are

---

**8.** That plaintiff's physical condition would be at issue should he seek re-employment was also evident from the Confidential Separation Agreement, in which the parties agreed that

plaintiff would not be precluded from employment by defendant in the future if plaintiff "is qualified and physically able to perform available work."

necessary to enable job performance, the employer, who is already familiar with the disability, must learn of those accommodations in order to have any realistic chance of assessing the ability to perform.

70 F.3d at 677. We find the reasoning of the First Circuit persuasive and applicable to the instant case.

## IV

### *CONCLUSION*

The district court's reasoning was sound. Defendant's request for a medical release as a prerequisite to re-hiring plaintiff, a former employee with a known disability, did not run afoul of the ADA. Neither the letter nor the spirit of the ADA was offended by the request. As a matter of law, defendant's actions did not violate the ADA's prohibition on pre-employment medical examinations or inquiries. The judgment of the district court is affirmed.