NETHIA JOYNER *v.* SIMKINS INDUSTRIES, INC.
(AC 29093)

Harper, Lavine and West, Js.

Argued September 8—officially released November 4, 2008

*Steven D. Jacobs*, for the appellant (plaintiff).

*Jeffrey W. Kennedy*, with whom, on the brief, was *Margot Kenefick Burkle*, for the appellee (defendant).

*Opinion*

LAVINE, J. In this wrongful discharge action, we must determine whether the defendant, Simkins Industries, Inc., violated a public policy underlying the Americans with Disabilities Act[1] (ADA) when it discharged the plaintiff, Nethia Joyner, for failing to submit to a return to work medical examination. We conclude that it did not and affirm the judgment of the trial court.

---

[1] See 42 U.S.C. § 12101 et seq. The congressional findings and purpose of the act are set forth, respectively, at 42 U.S.C. § 12101 (a) and (b).

The plaintiff's substituted complaint sounds in three counts: wrongful discharge, breach of implied contract and breach of the covenant of good faith and fair dealing. Following a one day trial, the court found the following facts. The defendant employed the plaintiff at its New Haven facility from 1986 until August, 2003. In 1999, the plaintiff and her husband established a plumbing business that they operated from their home. In June, 2003, a fire destroyed the defendant's Baltimore facility, and some of its production demands previously performed in that facility were transferred to the New Haven plant. The plaintiff claimed that, at that time, her workload increased over a period of approximately six weeks, causing her to be "stressed out."

On August 11, 2003, the plaintiff did not report to her job and telephoned employees of the defendant to advise them that she was sick. On August 14, 2003, the plaintiff saw Dayo Adetola, a physician, who sent a note via facsimile to the defendant's New Haven office, advising that the plaintiff was suffering from a "medical condition" and was unable to return to work until August 25, 2003. Several of the defendant's employees telephoned the plaintiff on numerous occasions, but the plaintiff failed to respond to the calls. On August 19, 2003, the plaintiff received a letter from the defendant, asking her to submit to a medical examination that the defendant had scheduled for her on Friday, August 22, 2003, at the Hospital of Saint Raphael occupational health clinic. The plaintiff did not attend the medical examination and did not inform the defendant of her intention not to submit to the examination. On August 25, 2003, the defendant informed the plaintiff that she was insubordinate in failing to comply with a direct order and that her employment had been terminated effective August 22, 2003.

The court found that at the time of and following the termination of the plaintiff's employment, she continued to conduct her plumbing business. In October, 2003,

she enrolled in an entrepreneur class for two to three months. The plaintiff claimed that she made efforts to obtain other employment but was unsuccessful.

The defendant presented evidence that it had terminated the plaintiff's employment on the basis of her noncompliance with § P 9 of the employee handbook, regarding "physical exams." The plaintiff, in response, contended that she was not required to submit to a return to work medical examination and that at the time, she had a generalized anxiety disorder. The plaintiff argued that her discharge for failure to attend a return to work medical examination was unlawful. Although she concedes that she was an at-will employee, the plaintiff claims that her discharge violated the provisions of the ADA, which limits employer required medical examinations to those "shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112 (d) (4) (A).

The court found that the testimony of Diane Lavorgna, the defendant's corporate manager of human resources, established the reasonableness of the defendant's request that the plaintiff be examined medically before she returned to her job. Moreover, the defendant had a legitimate interest in determining whether the plaintiff was fit to return to work and to protect fellow employees if her condition constituted a risk to them. The vagueness of Adetola's note and the plaintiff's failure to respond to telephone calls or to communicate with the defendant's employees, the court concluded, justified the defendant's request for a medical examination.

The court further found that the plaintiff's contention that the defendant's employee handbook does not provide for return to work examinations conflicts with § P 9 of the handbook, which provides: "A physical examination, at the Company's expense, may be

required when either of the following situations exist: A. The employee claims inability to work because of a health limitation. B. Both the employee's Supervisor and the Human Resources Manager believe the employee is unable to properly perform the work required due to a possible health limitation." Lavorgna testified that the vagueness of the plaintiff's complaints and concerns regarding the plaintiff's ability to do her job, as well as any adverse effect on other employees, justified the defendant's request that the plaintiff have a medical examination.

The court concluded that the plaintiff failed to establish that by terminating her employment, the defendant violated an important public policy under the ADA. The court determined that the defendant discharged the plaintiff due to her insubordination in refusing to attend a medical examination, as clearly set forth in the employee handbook. The plaintiff appealed, claiming that the court improperly concluded that she had failed to establish that the grounds for her employment discharge violated an important public policy.

This court affords "plenary review to conclusions of law reached by the trial court. . . . Under plenary review, we must decide whether the trial court's conclusions of law are legally and logically correct and find support in the record." (Citation omitted; internal quotation marks omitted.) *Krichko* v. *Krichko*, 108 Conn. App. 644, 648, 948 A.2d 1092, cert. granted on other grounds, 289 Conn. 913, 957 A.2d 877 (2008).

"In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability. Beginning in the late 1950s, however, the courts began to carve out certain exceptions to the at-will employment doctrine, thereby giving rise to tort

claims for wrongful discharge." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC,* 260 Conn. 691, 697–98, 802 A.2d 731 (2002). "*Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980), sanctioned a common-law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety derived from some important violation of public policy. . . . In doing so, [our Supreme Court] recognized a public policy limitation on the traditional employment at-will doctrine in an effort to balance the competing interests of employers and employees." (Citations omitted; internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC,* supra, 698.

In this case, the plaintiff claims that the defendant violated the public policy underlying the ADA by requiring her to undergo a return to work medical examination and draws our attention to a decision of the United States Court of Appeals for the Second Circuit to support her position, i.e., *Conroy* v. *Dept. of Correctional Services,* 333 F.3d 88, 97 (2d Cir. 2003) (summary judgment reversed as questions of material fact exist as to business necessity defense). Although we agree that requiring that an employee undergo a return to work medical examination may constitute a violation of the ADA under certain circumstances, we conclude that there was no such violation in this case given the circumstances.

Under 42 U.S.C. § 12112 (d) (4) (A), "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is *shown to be job-related and consistent*

*with business necessity.*"[2] (Emphasis added.) The Second Circuit [3] has held that "[a]n employer cannot simply demonstrate that an inquiry is convenient or beneficial to its business. Instead, the employer must first show that the asserted 'business necessity' is vital to the business. For example, business necessities may include ensuring that the workplace is safe and secure or cutting down on egregious absenteeism. The employer must also show that the examination or inquiry genuinely serves the asserted business necessity and that the request is no broader or more intrusive than necessary. The employer need not show that the examination or inquiry is the only way of achieving a business necessity, but the examination or inquiry must be a reasonably effective method of achieving the employer's goal." *Conroy* v. *Dept. of Correctional Services*, supra, 333 F.3d 97–98. Moreover, "[e]mployers are permitted to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to [claims under the act]. *Cody* v. *CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998)." *Thomas* v. *Corwin*, 483 F.3d 516, 528 (8th Cir. 2007).

In reaching its holding in *Conroy*, the Second Circuit explained that its standard is consistent with the case law that has developed in other federal courts.[4]

[2] "[A] plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112 (d) (4) [A]. In contrast to other parts of the [act], the statutory language does not refer to qualified individuals with disabilities, but instead merely to 'employees'." *Conroy* v. *Dept. of Correctional Services*, supra, 333 F.3d 94–95.

[3] "In general, we look to the federal courts for guidance in resolving issues of federal law. . . . [T]he decisions of the federal circuit in which a state court is located are entitled to great weight in the interpretation of a federal statute." (Citation omitted; internal quotation marks omitted.) *Krondes* v. *O'Boy*, 69 Conn. App. 802, 808, 796 A.2d 625 (2002).

[4] See "*Harris* v. [*Harris & Hart, Inc.*, 206 F.3d 838, 844 (9th Cir. 2000)] (finding no [violation of the act] when employ[er] refused to rehire plaintiff without a medical release when employ[er] knew that plaintiff had a disability that had previously forced him to resign); *Porter* v. *United States Alumoweld Co.*, 125 F.3d 243, 246 (4th Cir. 1997) (finding consistency with business

"[C]ourts will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine [1] whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties (such as frequent absences or a known disability that had previously affected the employee's work) or [2] whether an employee's absence or request for an absence is due to legitimate medical reasons, when the employer has reason to suspect abuse of an attendance policy. These two business necessity justifications are merely illustrative, and an employer may be able to demonstrate other business necessities. For example, [in the *Conroy* case, the defendant was required to] guard against the severe disruption that would result from infectious disease being spread through the staff or inmate population." *Conroy* v. *Dept. of Correctional Services*, supra, 333 F.3d 98.

On the basis of our review of the evidence presented at trial, we conclude that there is sufficient evidence

necessity when employer required a medical exam from employee, whose job required lifting, when employee sought to return from a leave of absence following back surgery for a work-related injury); *Reichmann* v. *Cutler-Hammer, Inc.*, 183 F. [Sup.] 2d 1292, 1299 (D. Kan. 2001) (finding that evidence supported jury's finding that after plaintiff had suffered stroke and now requested transfer to a more strenuous position within the company, requiring extensive questionnaire from employee's doctor served business necessity); *Rodriguez* v. *Loctite Puerto Rico, Inc.*, 967 F. [Sup.] 653, 661 (D.P.R. 1997) (finding no [violation of the act] when employer required an independent examination after plaintiff requested a two months leave of absence)." *Conroy* v. *Dept. of Correctional Services*, supra, 333 F.3d 98.

See also *Thomas* v. *Corwin*, supra, 483 F.3d 527 (employer had reason to doubt employee's capacity to return to position where employee previously communicated concerns regarding her employment situation and safety, went to emergency room for anxiety attack that was diagnosed as related to work-related stress and anxiety and took three week leave of absence); *Tice* v. *Centre Area Transportation Authority*, 247 F.3d 506, 517 (3d Cir. 2001) (employer's request for medical examination reasonable where certification from employee's physician relied on employee's assessment of his own ability to operate bus safely).

in the record to support the court's finding that the defendant discharged the plaintiff for insubordination for failing to comply with a request to submit to a return to work medical examination as required by the employee handbook. We see nothing in *Conroy*, which was not decided on its merits, that causes us to doubt our conclusion. The plaintiff here testified that she felt overburdened by additional responsibility that befell her when the defendant's New Haven facility took on some of the production previously performed by the Baltimore facility, which had been destroyed by fire. The plaintiff complained to her supervisor, David Whipple, that she was feeling stress. The plaintiff was absent from her job for several days before having her physician provide the defendant with a note, indicating that the plaintiff was suffering from a medical condition and would not be able to return to her position until August 25, 2003. The defendant's employees made telephone calls to the plaintiff's home to ascertain the nature of her condition. The plaintiff testified that she did not always answer the telephone or respond to messages left at her home.

The defendant presented evidence that Charlotte Eubank, the defendant's director of human resources, requested that the plaintiff undergo a return to work medical examination. The plaintiff not only failed to attend the scheduled examination but also failed to inform the defendant that she would not undergo the examination.

Lavorgna testified that the employee handbook gave the defendant the right to request a return to work medical examination because the plaintiff was vague about the nature of her medical condition and was not forthcoming with information to Eubank. According to Lavorgna, the defendant sought to determine whether the plaintiff was fit to return to work and to protect its other employees if the plaintiff's condition put them at

risk.[5] We agree with the court's finding that the vagueness of Adetola's note and the plaintiff's refusal to discuss the nature of her medical condition justified the defendant's request for a return to work medical examination.

We conclude that the defendant has met its burden to demonstrate a business necessity for requiring the plaintiff to undergo a return to work medical examination as set forth in the employee handbook. Our conclusion is supported by *Thomas* v. *Corwin*, supra, 483 F.3d 527–28, in which the plaintiff refused to permit her employer to inquire about the nature of her illness that required her to take anxiety medication and antidepressants. Our decision also is consistent with *Tice* v. *Centre Area Transportation Authority*, 247 F.3d 506, 516–18 (3d Cir. 2001), in which the plaintiff declined to submit to an independent medical examination when his treat-

---

[5] Lavorgna testified, in part, on cross-examination by the defendant's counsel as follows:

"Q. Okay. What was it about [the plaintiff's] verification that she provided to you from her doctor that caused you to seek further inquiry into her medical situation?

"A. The certificate was very vague.

"Q. Did you recall what the certificate stated?

"A. I believe it said she would be out due to a medical condition.

"Q. Under what authority and for what purpose did you ask her to submit to another medical exam?

"A. Well, we wanted to make sure if and when she did come back, she would be able to do her job.

"Q. Did you have any further concerns?

"A. We were also concerned with the people in the office, as well, if it would affect the people in the office, her time out and that sort of thing.

"Q. Had you tried to obtain that sort of information from [the plaintiff] without making the formal request for a medical examination?

"A. I did not.

"Q. And did the [defendant]?

"A. Charlotte Eubank did.

"Q. What efforts were made on behalf of the company to obtain this information?

"A. Charlotte Eubank made numerous calls to [the plaintiff] to obtain information, and most of the calls were . . . unanswered."

ing physician failed to provide medically based information as to the plaintiff's ability to operate a bus safely. The plaintiff failed to rebut the defendant's evidence. The defendant, therefore, did not contravene an important public policy when it discharged the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.