******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SOUTHPORT CONGREGATIONAL CHURCH–UNITED
CHURCH OF CHRIST *v.* BETTY ANN HADLEY,
COEXECUTOR (ESTATE OF ALBERT L.
HADLEY), ET AL.
(AC 35289)
(AC 36395)

Lavine, Sheldon and Bishop, Js.

*Argued February 20 and May 28—officially released August 19, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Radcliffe, J.)

*John A. Farnsworth*, for the appellant in both
appeals (plaintiff).

*Daniel J. Krisch*, with whom was *Jeffrey F. Gostyla*,
for the appellee in both appeals (defendant Cheekwood
Botanical Garden and Museum of Art).

*Grant P. Haskell*, for the appellees in both appeals
(named defendant et al.).

*James Hogan Love* filed a brief for the appellee in
AC 35289 (named defendant).

*Opinion*

SHELDON, J. In these appeals involving a disputed application of the doctrine of equitable conversion, the central question is whether certain real property automatically passed to the specific devisee of the property under a will upon the death of the decedent when, prior to the decedent's death, he had entered into a contract to sell the property to a third party. The decedent, Albert L. Hadley, in his last will and testament, specifically devised a residential real property that he owned in Southport to the plaintiff, Southport Congregational Church–United Church of Christ (church). Prior to his death, however, he entered into a contract to sell the property to a third party, Evelyn P. Winn. The decedent died before the closing on the property could take place and before a mortgage contingency clause contained in the sales contract either expired or was waived or fulfilled. The church claims that the Superior Court erred in applying the doctrine of equitable conversion in this case and, on that basis, authorizing the defendant coexecutors of the decedent's estate, Betty Ann Hadley and Lee Snow, to complete the sale of the property to Winn following the decedent's death, pursuant to General Statutes § 45a-325.[1] The church argues, as it did below, that because it is the specific devisee of the property under the decedent's will and the decedent's estate is solvent, the property cannot be sold without its written consent, pursuant to General Statutes § 45a-428 (b).[2] To resolve the church's claim on appeal, we must determine whether, at the time of the decedent's death, he retained an ownership interest in the subject property or, under the doctrine of equitable conversion, he retained only an equitable claim to the proceeds from the expected sale of the property, while Winn held title to the property itself. If, at the time of his death, the decedent no longer had an ownership interest in the property, it could not have passed automatically to the church upon his death, and thus the Probate Court, and the Superior Court thereafter, properly ruled that the coexecutors of the estate had the authority to sell the property, pursuant to § 45a-325, without the church's approval. The church has appealed from the judgment of the Superior Court, asserting that because the contract contained a contingency that had neither expired nor been waived or fulfilled by the time of the decedent's death, the contract was not subject to specific performance at that time, and, thus, not subject to the doctrine of equitable conversion. We agree with the church that the court improperly applied the doctrine of equitable conversion to this case, and, thus, that the property passed to the church by operation of law upon the decedent's death. The Superior Court's judgments authorizing the sale of the property to Winn without the consent of the church must therefore be reversed.[3]

The following factual and procedural history is relevant to the resolution of the claims raised in these appeals. The decedent owned a residential property at 504 Pequot Avenue in Southport. In his last will and testament dated September 22, 2010, he specifically devised that property to the church. On March 21, 2012, however, the decedent entered into a contract to sell that property to Winn. That transaction did not close prior to the decedent's death on March 30, 2012.

The decedent's will was admitted to probate in the Surrogate's Court for the County of New York, New York, on or about May 10, 2012. On June 15, 2012, the coexecutors of the decedent's estate filed an application with the Probate Court for the district of Fairfield for ancillary jurisdiction based upon the location of the subject property and for authorization to sell the property, pursuant to § 45a-325, in accordance with the contract executed by the decedent prior to his death. Around that same time, Cheekwood Botanical Garden and Museum of Art (Cheekwood) filed a claim that a certain letter from the decedent dated March 6, 2012, was a valid and enforceable codicil to the decedent's will, under which Cheekwood was to receive the proceeds from the sale of the property. On July 24, 2012, the Probate Court granted the application for ancillary administration, appointed Hadley and Snow as coexecutors of the decedent's estate, and granted the application for authorization to sell the property to Winn for the contract price of $466,000, which funds were to be held in an interest-bearing account until further order of that court.

On August 10, 2012, the church filed an appeal from the Probate Court's July 24, 2012 decree with the Superior Court, wherein it alleged that because it was the specific devisee of the subject property under the decedent's will, and the decedent's estate was solvent, the coexecutors could not sell the property without its consent pursuant to § 45a-428 (b). The church had not consented to the sale.

Five days later, on August 15, 2012, the Probate Court amended its July 24, 2012 decree to require the coexecutors, under § 45a-428, to obtain the consent of the church before selling the property.[4]

On September 24, 2012, with the church's probate appeal from the July 24, 2012 decree still pending, the coexecutors filed an answer, special defense and counterclaim in response to the church's complaint therein. In their counterclaim, the coexecutors sought authorization, as they had initially in the Probate Court, to sell the subject property pursuant to § 45a-325.[5] Thereafter, on October 5, 2012, the coexecutors filed a separate application with the Superior Court seeking the same relief as they were seeking in their counterclaim, to wit: authorization to sell the property to Winn pursuant

to § 45a-325. The church withdrew its appeal later that day.

On December 4, 2012, Cheekwood, which had been permitted to intervene in the probate appeal as a party defendant on November 5, 2012, filed a memorandum of law in support of the coexecutors' application for authorization to sell the property, in which it argued, under the doctrine of equitable conversion, that because the decedent had executed the contract for sale of the property prior to his death, his interest in the real property had terminated at that time and had vested instead in the purchaser, Winn, leaving him with only an interest in the expected proceeds from the ultimate sale of the property. Thus, Cheekwood argued, because the estate had no interest in the subject real property at the time of the decedent's death, § 45a-428 did not apply.

In response, the church filed an objection to the coexecutors' application, in which it argued that: the application should be denied pursuant to General Statutes § 45a-24[6] because it constituted an impermissible collateral attack on the Probate Court's August 15, 2012 decree; the Superior Court did not have jurisdiction to adjudicate the application because it was beyond the scope of the probate appeal, which had since been withdrawn; and the doctrine of equitable conversion did not apply in the circumstances of this case because the sales contract contained both an unsatisfied mortgage contingency clause and a waiver by the decedent of his right to specific performance of the contract, either of which assertedly precluded the termination of his interest in the real property.

On December 7, 2012, following a hearing on the application for authorization to sell the subject property at which the parties submitted documentary evidence and presented oral argument in support of their respective positions, the court rejected the church's jurisdictional challenges,[7] then granted the coexecutors' application for authorization to sell the property to Winn. The court reasoned, under the doctrine of equitable conversion, that because the decedent had executed what it found to be a valid sales contract prior to his death, he no longer had an interest in the property at the time of his death, but only an equitable interest in the funds that would ultimately be realized from the sale of the property. The court thus concluded that § 45a-428 did not apply to this case, that the decedent's contract to sell the property to Winn was binding upon the executors of his estate, that the estate was solvent, that the property should be sold pursuant to § 45a-325, and that the proceeds realized from that sale should be held in an interest-bearing account until such time as the Probate Court determined the appropriate disposition of those funds. Following the issuance of those orders, when counsel for the plaintiff asked the court

if it was "making any ruling on the counterclaim itself," the court responded: "No, because that's not before me. The only item before me is the application to sell real property. The counterclaim is found to be an appeal as part of the appeal of the order of the [Probate] Court of the district of Fairfield."

The church thereafter filed a motion to reargue, in which it renewed its § 45a-24 argument and elucidated its challenge to the court's jurisdiction. The church argued that a counterclaim is not a proper filing in a probate appeal and, additionally, because the counterclaim filed by the coexecutors in this case sought a declaratory judgment under General Statutes § 52-29, which confers jurisdiction to hear such matters upon the Superior Court, the counterclaim could not properly be heard in a probate appeal in which the Superior Court sits as a Probate Court. The court denied the motion to reargue and the church appealed from that judgment. That appeal bears docket number AC 35289.

On February 19, 2013, Cheekwood filed a motion for summary judgment on the coexecutors' counterclaim on the ground that the relief sought therein was identical to that sought in the coexecutors' earlier application to sell the subject property, which had been granted by the court. The church objected to Cheekwood's motion, asserting that Cheekwood did not have standing to move for summary judgment on the coexecutors' counterclaim and that the counterclaim was moot because the relief therein requested had already been granted by the court when it granted the coexecutors' application for authorization to sell the property. On September 30, 2013, the court granted Cheekwood's motion and took judicial notice, based only upon the oral representations of Cheekwood's counsel, that "Evelyn Winn is ready, willing and able to proceed with the sale, has waived the mortgage contingency clause, and is ready to proceed with an all-cash purchase. . . . [A]nd that has been the case from the beginning." The church thereafter filed a motion to reargue, in which it reasserted its challenges to the court's jurisdiction and further argued that the court "improperly took judicial notice of matters relating to the potential future purchase of the . . . property." The court denied the church's motion to reargue and the church appealed from that judgment. That appeal bears docket number AC 36395.

Following oral argument in AC 35289, this court sua sponte ordered expedited briefing and argument in AC 36395. The parties have fully briefed and argued the claims presented in both appeals and we address those claims herein. The substantive issue in the two appeals is identical, namely, whether the decedent's interest in the subject property automatically passed to the church upon his death, preventing the property from being sold by the estate without the church's consent pursuant to

§ 45a-428, or whether, because the decedent had entered into a contract to sell that property to Winn prior to his death, he retained only an equitable interest in the proceeds of its ultimate sale instead of any interest in the real property itself, thereby preventing the property from automatically passing to the church pursuant to the decedent's specific devise. Because both appeals arise from orders entered in the same underlying action, we will resolve them both in this opinion in the interest of judicial economy.

I

AC 35289

A

As a threshold matter, we must address the church's challenge to the Superior Court's subject matter jurisdiction over the coexecutors' application for authorization to sell the subject property under § 45a-325.[8] Because that application was filed in the context of and in furtherance of their counterclaim, we begin with the issue of whether the Superior Court had jurisdiction over the counterclaim. We conclude that the counterclaim was essentially an appeal from the Probate Court's August 15, 2012 decree, and that the coexecutors' separate application for authorization to sell the property under § 45a-325 was a pleading filed in furtherance of their claim on appeal, over which the Superior Court, sitting as a Probate Court in a probate appeal clearly had jurisdiction. Because the application was filed as part of a probate appeal, the Superior Court's adjudication of that application did not violate § 45a-24.

It is well settled that a challenge to the court's subject matter jurisdiction must be addressed, once it is raised, before the case may proceed, and that because the issue of jurisdiction presents a question of law, our review of a jurisdictional challenge is plenary. See *Guerra* v. *State*, 150 Conn. App. 68, 74, 89 A.3d 1028 (2014). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it." (Citation omitted; internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 531, 46 A.3d 102 (2012).

"An appeal from probate is not so much an appeal as a trial de novo with the Superior Court sitting as a Probate Court and restricted by a Probate Court's jurisdictional limitations." (Internal quotation marks omitted.) *Gardner* v. *Balboni*, 218 Conn. 220, 225, 588 A.2d 634 (1991). "[A probate] appeal brings to the Superior Court only the order appealed from. . . . The Superior Court may not consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked. . . . In a probate appeal . . . the Superior Court's jurisdiction is statutory and

limited to the order appealed from. The issues presented for review are those defined in the reasons of appeal. The Superior Court cannot consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked." (Citation omitted; internal quotation marks omitted.) *Marshall* v. *Marshall*, 71 Conn. App. 565, 569–70, 803 A.2d 919, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).

Here, the issue presented by the coexecutors' counterclaim, as well as by their separate application for authorization to sell the subject property, is identical to that presented in the initial probate appeal filed by the church, namely, whether the coexecutors should be authorized to sell the decedent's property pursuant to § 45a-325 under the contract for the sale of that property that the decedent had executed prior to his death, or whether § 45a-428 controls and requires the consent of the church as a precondition to that sale. Those pleadings thus set forth the parties' countervailing positions on that issue, differing only in the result sought by each party. The determination of the nature of the decedent's interest in the real property at the time of his death is dispositive of the question of which statute controls as to the sale of the property. The Probate Court initially answered that question in its July 24, 2012 decree by granting the coexecutors' application for authorization to sell the property under § 45a-325, but then amended that decree on August 15, 2012, to require the consent of the church for the sale under § 45a-428. In the context of the tortuous procedural history of this matter, the coexecutors' counterclaim may reasonably be construed as a cross appeal from the Probate Court's August 15, 2012 decree.[9] Not only is the counterclaim within the scope of the issues presented in the original probate appeal, but it raises the very same issue as that appeal. We thus conclude that, at the time that the Superior Court adjudicated the coexecutors' application, it had jurisdiction over their counterclaim. Accordingly, in this probate appeal, the Superior Court, sitting as a Probate Court having jurisdiction of the settlement of the decedent's estate to authorize the fiduciary to convey title of any real property held by the estate pursuant to § 45a-325, properly exercised jurisdiction over the coexecutors' application.

As noted herein, § 45a-24 provides in relevant part that unless a Probate Court decree is appealed, it constitutes a final judgment that shall not be subject to collateral attack. See footnote 6 of this opinion. The church argues that the coexecutors' application for authorization to sell pursuant to § 45a-325 constituted an impermissible collateral attack on the Probate Court's August 15, 2012 decree, which decided that very issue. Because we construe the coexecutors' counterclaim as an appeal from the Probate Court's August 15, 2012 decree, and their application was filed in the course of and in fur-

therance of that appeal, the application was not a collateral attack on that decree in violation of § 45a-24.

## B

We now turn to the church's substantive claim that the Superior Court improperly granted the coexecutors' application for authorization to sell the property pursuant to § 45a-325. The church challenges the court's application of the doctrine of equitable conversion to this case, claiming, inter alia, that because the sales contract between the decedent and Winn contained a mortgage contingency clause that had not yet expired nor had it been waived or fulfilled by the time of the decedent's death, the decedent maintained an ownership interest in the real property at the time of his death. On that basis, the church contends that the property became part of the decedent's estate upon his death, from which it passed automatically to the church, in accordance with his will, preventing the sale of that property by the coexecutors without the church's consent pursuant to § 45a-428. The coexecutors and Cheekwood disagree, arguing, as they did below, that § 45a-428 does not apply because the decedent did not have an interest in the real property at the time of his death due to his prior execution of a contract to sell the property to Winn. They contend that the execution of the sales contract transformed his interest from an ownership interest in the real property to an interest in the anticipated proceeds from the sale of the property, which is personalty to which § 45a-428 does not apply. We agree with the church.

"Under the doctrine of equitable conversion . . . the purchaser of land under an executory contract is regarded as the owner, subject to the vendor's lien for the unpaid purchase price, and the vendor holds the legal title in trust for the purchaser. . . . The vendor's interest thereafter in equity is in the unpaid purchase price, and is treated as personalty . . . while the purchaser's interest is in the land and is treated as realty." (Citations omitted; internal quotation marks omitted.) *Francis T. Zappone Co.* v. *Mark*, 197 Conn. 264, 267, 497 A.2d 32 (1985). "An equitable title is a right possessed by a person to have the legal title to property transferred to him upon the performance of specified conditions. . . . The right must be one enforceable in equity. . . . In other words, before one can claim equitable title, one must be in a position such that a court of equity could, in exercising its jurisdiction over the parties, convey legal title." (Citations omitted; internal quotation marks omitted.) *Francini* v. *Farmington*, 557 F. Supp. 151, 155 (D. Conn. 1982). For the doctrine of equitable conversion to apply, the real estate contract must be specifically enforceable. 14 R. Powell, Real Property (2007) § 81.03 [1], p. 81-85. "[A] contract involving a precondition such as adequate financing approval for the purchaser   . . .   is not a valid

agreement until the precondition has been accomplished." Id., p. 81-86. "Whether [a party is] in fact equitable owner of the [property] in question is . . . a conclusion of law"; *Francini* v. *Farmington*, supra, 155; over which our review is plenary. *Joyner* v. *Simkins Industries, Inc.*, 111 Conn. App. 93, 97, 957 A.2d 882 (2008).

Here, the contract for the sale of the subject property that was executed by the decedent and Winn on March 21, 2012, contained a mortgage contingency clause, in paragraph 17 thereof, which provided that the parties' agreement was contingent upon Winn obtaining a written commitment for a loan in the amount of $230,000 on or before April 16, 2012. As of the time of the decedent's death on March 30, 2012, that contingency had neither expired nor been waived or fulfilled.[10] Because the contract of sale contained a contingency clause which, as of the date of the decedent's death, had not yet been waived or fulfilled, then, on that date, the contract could not have been specifically enforced. The decedent thus maintained an ownership interest in the real property at the time of his death, not merely an equitable interest in the funds to be realized from the ultimate performance of the contract. In accordance with the decedent's will, the property had been specifically devised to the church. Therefore, because the estate was then solvent, that property could not have been sold without the consent of the church pursuant to § 45a-428. Accordingly, the Superior Court erred in granting the coexecutors' application for authorization to sell that property.

## II

### AC 36395

As previously noted, this second appeal stems from the Superior Court's granting of Cheekwood's motion for summary judgment on the coexecutors' counterclaim. The church argues that the court lacked jurisdiction over the motion because the relief requested in the counterclaim was identical to that previously requested in the coexecutors' application, which the court had already granted, thereby rendering the counterclaim moot.[11] We agree.

"A case is considered moot if [the] . . . court cannot grant the appellant any practical relief through its disposition of the merits . . . . Because mootness implicates this court's subject matter jurisdiction, it raises a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 311 Conn. 649, 659, 90 A.3d 196 (2014).

Although Cheekwood concedes that the counterclaim sought exactly the same relief as the coexecutors' application for authorization to sell the subject property, it contends that practical relief was available to it following the granting of the coexecutors' application because the ruling on the application was not a final

judgment that would have a preclusive effect on subsequent litigation of the same issue, whereas an order granting summary judgment on the counterclaim would be. We disagree. When the Superior Court granted the coexecutors' application for authorization to sell under § 45a-325, it concluded the parties' rights on that question, and thereby issued a final judgment. *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). Because there was no practical relief that could be afforded by any action on the counterclaim that differed from or went beyond the relief obtained by the coexecutors when the court granted their application for authorization to sell the property, the counterclaim was moot, and thus the Superior Court lacked jurisdiction to grant Cheekwood's motion for summary judgment.

The judgments are reversed and the case is remanded with direction to deny the coexecutors' application for authorization to sell the real property and to dismiss the coexecutors' counterclaim.

In this opinion the other judges concurred.

[1] General Statutes § 45a-325 provides: "The court of probate having jurisdiction of the settlement of the estate of any deceased person may, concurrently with courts of equity, authorize the fiduciary of the estate to convey the title of the deceased in any real property to any person entitled to it by virtue of any contract of the deceased person, or to convey the title of the deceased in any real property held or taken by him in any fiduciary capacity to his successor or to the person or persons entitled thereto."

[2] General Statutes § 45a-428 (b) provides: "Except as provided in this section, real property of a decedent whose estate is solvent and either specifically devised by will or forbidden by will to be sold or to be mortgaged shall not be so ordered to be sold or mortgaged without the written consent of the specific devisees or other parties interested as distributees of such real property or of the guardians ad litem or guardians or conservators of the estates of those not legally competent so to consent."

[3] In so concluding, we are mindful of the coexecutors' concern that the value of the property, and thus the value of the estate, is diminishing with the passage of time, based upon, among other factors, the cost to the estate of maintaining the property and the damage that it has sustained by various storms since the decedent's death. We are confined, however, to the legal issue presented on appeal and cannot address those concerns in this forum.

[4] On January 18, 2013, the Probate Court vacated its amended decree dated August 15, 2012, which required the church's consent in order to sell the property and reinstated its June 24, 2012 order authorizing the sale without the church's consent. The church has appealed from that decree and that appeal is currently pending before the Superior Court. See *Southport Congregational Church–United Church of Christ* v. *Hadley*, Superior Court, judicial district of Fairfield, Docket No. CV-13-6033229-S.

[5] At all times mentioned herein, the coexecutors have made it clear that they take no position as to who should ultimately be awarded the proceeds from the sale of the real property and those proceeds should be placed in an account until such time as the Probate Court orders the distribution of those funds.

[6] General Statutes § 45a-24 provides in relevant part: "All orders, judgments and decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud."

[7] The court stated in its oral decision: "Section 45a-427 of the General Statutes which deals with a situation which we have here this morning. That statute says that . . . § 45a-325, excuse me, that the court of Probate having jurisdiction of the settlement of the estate of a deceased person may concurrently with courts of equity authorize the fiduciary of the estate to convey the title of the deceased in any real property to any person entitled to it by virtue of any contract of a deceased person, or to convey the title

of the deceased to any real property held or taken by him in any fiduciary capacity to a successor, or to the person or persons entitled thereto.

"Now, that statute provides for concurrent jurisdiction in the Probate Court and the Superior Courts of the State of Connecticut which this is a Court of equity, the Probate Court being a court of limited jurisdiction and not a – a court of equity.

"Now based on the – the facts of – of this case, the court finds that the decree and the amended decree which are exhibits in this case; Exhibits . . . G and H constitute – H and I rather, constitute a single decree, the initial decree being issued in July and the amended decree relating back to that decree and it's labeled an – an amended decree and therefore attaches to the initial decree which was issued, ordered and properly appealed to this court. It's found that they are one decree and that the August 15th decision of the court relates back to the initial decisions. Further found that a – an appropriate probate appeal was taken from the decree to this court, and that a counterclaim was filed in that appeal prior to its being withdrawn, and therefore the court does have jurisdiction to rule on the counterclaim sitting as a Probate Court to determine whether there was, in fact, an error of law."

[8] The church takes issue with the Superior Court's determination that the filing of a counterclaim seeking a declaratory judgment in the context of a probate appeal transformed the entire matter into a civil action over which it possessed and exercised its general equity powers. Although we agree that the court's reasoning in this regard is perplexing, we need not dissect that reasoning as our review of this issue is de novo.

The church also claims that the counterclaim seeks a declaratory judgment pursuant to General Statutes § 52-29 over which the Superior Court lacks jurisdiction in a probate appeal. The church aptly argues that § 52-29 confers jurisdiction in actions for declaratory judgment upon the Superior Court, and in a probate appeal, the Superior Court sits as a Probate Court, and thus would be unable to adjudicate an action for declaratory judgment in that capacity. The church's interpretation of the counterclaim as an action for declaratory judgment pursuant to § 52-29, however, is based upon a singular use of the term "declaratory judgment" in the absence of any reference to § 52-29. In fact, the language of the counterclaim makes clear that its request for relief arises under § 45a-325. The church's jurisdictional challenge in this regard is therefore misplaced.

[9] At oral argument before this court, the church disputed the notion that the counterclaim could be construed as a cross appeal on the ground that it was not filed within the thirty days prescribed by General Statutes § 45a-186. It is well settled, however, that when an appeal is filed after the limitations period has terminated, the appeal is rendered voidable, but not void. *Phinney* v. *Rosgen*, 162 Conn. 36, 41, 291 A.2d 218 (1971); *Heiser* v. *Morgan Guaranty Trust Co.*, 150 Conn. 563, 566, 192 A.2d 44 (1963). "[T]he statute limiting the time for taking appeals from probate is a statute of limitations in the ordinary sense," and is not intended "to affect the subject matter jurisdiction of the Superior Court over an appeal . . . if not objected to in the proper way and at a proper time." (Internal quotation marks omitted.) *Phinney* v. *Rosgen*, supra, 41; see also *Heiser* v. *Morgan Trust Co.*, supra, 566–67. A motion to dismiss is the proper vehicle by which to attack an untimely appeal from probate. *Phinney* v. *Rosgen*, supra, 41; *Heiser* v. *Morgan Guaranty Trust Co.*, supra, 567; see *Conboy* v. *State*, 292 Conn. 642, 654 n.18, 974 A.2d 669 (2009) (plea in abatement replaced by motion to dismiss). The objection to the appeal, however, must be timely or it is waived. See *Phinney* v. *Rosgen*, supra, 42; *Heiser* v. *Morgan Trust Co.*, supra, 567. The timeliness of the counterclaim as an appeal from the Probate Court's amended decree of August 15, 2012, was never challenged before the Superior Court by the church. Any such claim is therefore waived.

[10] As noted herein, when the Superior Court granted Cheekwood's motion for summary judgment, the court took judicial notice of the fact that "Winn is ready, willing and able to proceed with the sale, has waived the mortgage contingency clause, and is ready to proceed with an all-cash purchase. . . . [A]nd that has been the case from the beginning." Because the contingency clause had not been waived as of the date of the decedent's death, it is irrelevant that Winn may have waived it since that time.

[11] The church challenges the Superior Court's jurisdiction to hear the counterclaim on several grounds. Because we conclude that the counterclaim is moot, we need not address those additional jurisdictional challenges.