BRADY DOUGAN *v.* TOMOKO HAMADA DOUGAN
(AC 28711)

McLachlan, Gruendel and Borden, Js.

Argued November 12, 2008—officially released May 19, 2009

*Gaetano Ferro*, with whom were *Sarah E. Murray* and, on the brief, *Livia D. Barndollar*, for the appellant (defendant).

*Gary I. Cohen*, with whom were *Annmarie P. Briones* and, on the brief, *Marci Finkelstein*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The question raised by this appeal is whether the provision of a stipulated judgment requiring the payment of interest, upon default, from the date of the stipulated judgment to the date of default is enforceable. The defendant, Tomoko Hamada Dougan, claims that the court improperly (1) held such a provision of her stipulated dissolution judgment unenforceable and (2) refused to enforce the provision that it previously had found fair and equitable.[1] We agree and reverse the judgment of the trial court.

The parties married in November, 1988, in Tokyo, Japan. The parties had two children, born in 1992 and 1997, respectively. At the time of the dissolution, the

---

[1] The defendant also claims that the court improperly (1) found that the plaintiff, Brady Dougan, had paid a "significant price" for his late payment and (2) modified the parties' property division. Because we find merit in the defendant's claims concerning the validity of the stipulated judgment, we do not reach her remaining claims on appeal.

plaintiff, Brady Dougan, was employed as a senior executive of one of the world's largest investment banks and financial institutions. He had a gross weekly income of $384,615.

Following more than one year of proceedings, the parties entered into a stipulation for judgment on June 16, 2005. Both parties were represented by experienced counsel during the proceedings and negotiations leading to the stipulation. The parties were assisted in reaching an agreement by an agreed upon attorney mediator.

The stipulation included a complete distribution of the nearly $80 million in assets held by the parties. As part of that property division, the plaintiff agreed to pay the defendant $15,325,000 by cash, check or the equivalent thereof in two installments.[2] The agreement provided that the plaintiff pay $7,825,000 within thirty days of the dissolution decree and the remaining $7.5 million "on or before June 16, 2006. That amount shall be fully secured. The [plaintiff] shall provide security within thirty days of the time of the decree dissolving the marriage of the parties. If the [defendant] believes the security to be unreasonable as to amount, terms or otherwise, the Stamford Court shall determine reasonable security and the decree of dissolution shall reserve jurisdiction for that purpose. In the event payment is not made when due, interest at ten [percent] per annum shall accrue from the date *hereof* until fully paid and the [plaintiff] shall be responsible for all of the [defendant's] costs of collection." (Emphasis added.)

At the dissolution hearing on June 17, 2005, the plaintiff testified that he was satisfied that he had had an ample opportunity to consider all of the issues implicated by the stipulated judgment and that taken as a

---

[2] The defendant also received one of the parties' residences, valued at $9.6 million, accounts totaling $143,336 and a 2000 BMW X5. The plaintiff received the remainder of the assets held by the parties.

whole and recognizing that every agreement is by its nature a compromise, the agreement was fair and reasonable. The plaintiff also testified that the parties had agreed on the property division, including the transfer of cash as set forth in the agreement, and he acknowledged that "time was of the essence" and that if the payment was not made on time, interest could be imposed.

The parties negotiated the terms of the stipulation thoroughly. When questioned by the plaintiff's attorney, the defendant testified that during negotiations, she suggested that changes be made to paragraphs and sections of the agreement.[3] The court also asked the defendant if she was comfortable with the stipulation, and she confirmed that she was. The court then stated, "I think it's fair, by the way, if it means anything to you."

On June 17, 2005, the court found the stipulation for judgment "fair and equitable," rendered judgment of dissolution of the marriage and incorporated the stipulation for judgment by reference.

On June 28, 2006, the plaintiff paid the defendant $7.5 million.[4] Subsequently, the plaintiff paid the defendant $24,999.96, representing 10 percent interest from June 16 to June 28, 2006. The defendant moved for enforcement of the stipulation and requested that the court

[3] In addition, during the dissolution hearing, the following exchange occurred:

"[The Plaintiff's Counsel]: You understand that . . . the court, if it approves the agreement, will essentially provide that at the expiration of . . . five years, if the alimony has not ended by reason of the death of either party or [the defendant's] remarriage, it will end on that date and may not be extended?

"[The Plaintiff]: That's right.

"The Court: Remarriage terminates, cohabitation doesn't?

"[The Plaintiff's Counsel]: Yes, sir. There was a quid pro quo for the removal of a cohabitation provision."

[4] The first payment, due within thirty days of the dissolution decree, is not at issue in this appeal.

order the plaintiff to pay her interest in accordance with the terms of the judgment. The defendant argued that if the payment was not made on or before June 16, 2006, the agreement provided for interest at the rate of 10 percent *from the date of the stipulation* to the date the payment was made to the defendant. The court heard argument by the parties on the issue of whether the interest provision of the agreement was void as against public policy. On March 15, 2007, in its memorandum of decision, the court held that the provision for interest from the date of the stipulation was invalid and unenforceable because it was not a valid liquidated damages clause but "a provision, which has as its prime purpose the deterrence of a breach by the [plaintiff], which is an invalid purpose and is against public policy."[5] The defendant timely appealed.

I

The defendant first claims that the court improperly held unenforceable a provision of the parties' stipulated dissolution of marriage judgment requiring the payment of interest, upon default, from the date of the stipulated judgment to the date of default. Specifically, the defendant claims that such a provision is not invalid as against public policy. We agree.

The stipulation for judgment is an agreement by the parties that the court incorporated into the judgment and is a contract of the parties.[6] *Sachs* v. *Sachs*, 60

---

[5] The plaintiff also argued to the court that the provision was ambiguous. The court found that the provision was "clear and unambiguous." The plaintiff has not challenged that finding in this court.

[6] Marital separation agreements, like a number of other types of contracts, are construed differently because of the status or relationship of the parties involved. See, e.g., *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 455–57, 844 A.2d 836 (2004) (burden and standard of proof different when one party is fiduciary of other); *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 416–18, 538 A.2d 219 (1988) (notice provisions of adhesion contract not literally enforced); Home Solicitation Sales Act, General Statutes § 42-134a et seq. (contract voidable by buyer when conditions not met); General Statutes § 36a-771 (statutory requirements for retail installment contracts).

Conn. App. 337, 341–42, 759 A.2d 510 (2000). "[T]he construction of a written contract is a question of law for the court. . . . The scope of review in such cases is plenary. . . . Because our review is plenary, involving a question of law, our standard for review is not the clearly erroneous standard used to review questions of fact found by a trial court. Our review of the parties' agreement is plenary." (Citations omitted; internal quotation marks omitted.) Id., 342. Additionally, because the parties agree as to the underlying facts, whether the challenged provision violates public policy is a question of law requiring our plenary review.[7] See *Sandford* v. *Metcalfe*, 110 Conn. App. 162, 168, 954 A.2d 188, cert. denied, 289 Conn. 931, 958 A.2d 160 (2008); see also *Gurski* v. *Rosenblum & Filan, LLC*, 276 Conn. 257, 266, 885 A.2d 163 (2005).

"Although it is well established that parties are free to contract for whatever terms on which they may agree . . . it is equally well established that contracts that violate public policy are unenforceable. . . . [T]he question [of] whether a contract is against public policy is [a] question of law dependent on the circumstances of the particular case, over which an appellate court has unlimited review." (Citations omitted; internal quotation marks omitted.) *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 326–27, 885 A.2d 734 (2005), quoting *Gibson* v. *Capano*, 241 Conn. 725, 730, 699 A.2d 68 (1997); *Solomon* v. *Gilmore*, 248 Conn. 769, 774, 731 A.2d 280 (1999); *Parente* v. *Pirozzoli*, 87 Conn. App. 235, 245, 866 A.2d 629 (2005), citing 17A Am. Jur. 2d 312, Contracts § 327 (2004). Our Supreme Court has noted that "[t]he ultimate determination of what constitutes the public interest must be made considering the

[7] The court made "findings" as to the parties' intent, but we note that the parties stipulated only to the circumstances of the late payments. Accordingly, the court's findings as to the parties' intentions must be taken from its interpretation of the contractual provisions.

totality of the circumstances of any given case against the backdrop of current societal expectations."[8] (Internal quotation marks omitted.) *Hanks* v. *Powder Ridge Restaurant Corp.*, supra, 330.

It is well established that "a term in a contract calling for the imposition of a penalty for the breach of the contract is contrary to public policy and invalid . . . ." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 203, 931 A.2d 916 (2007). Our Supreme Court has also recognized, however, that the government has an interest in encouraging private agreements that have been incorporated into decrees for dissolution, separation or annulment. See *Billington* v. *Billington,* 220 Conn. 212, 221, 595 A.2d 1377 (1991) ("strong policy that the 'private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine' "). Negotiated settlement of these affairs conserves judicial resources and encourages private resolution of family issues. Additionally, the government has an interest in preserving and enforcing orders that were entered by the courts in dissolution proceedings after a determination that the judgment is fair and equitable. See General Statutes § 46b-66 (a) (court may accept stipulation for judgment only after inquiry and finding that it is fair and equitable under all circumstances). This conserves judicial resources because the courts are not forced to rework decrees to account for newly raised postjudgment arguments that are based on public policy. Otherwise, the public would have no confidence in the judiciary to resolve disputes in a conclusive manner.[9]

---

[8] In evaluating current societal expectations, we must consider legislative enactments as an expression of those expectations. General Statutes § 36a-771 (d), effective October 1, 2003, is such an expression.

[9] The dissent suggests that these latter policies were not raised on appeal. We note, however, that the defendant briefed the issue in her principal brief by discussing (1) our well established public policy of encouraging the private settlement of cases, (2) the necessity that parties may rely on the

Additionally, in Connecticut, parties to a contract may bargain for a discount to ensure prompt performance. General Statutes § 36a-771 (d) acknowledges this practice in retail installment contracts and approves of it, as long as the contract contains language sufficient to apprise the parties of their rights and obligations. That statute provides: "Each retail installment contract . . . on a deferred payment schedule shall also contain an explanation of the *consequences of the failure* . . . to make . . . deferred installment payments under the contract in a timely manner, including a clear statement of whether or not *interest would be charged for the entire period of deferment* under the contract and, if so, the rate of such interest. . . ." (Emphasis added.) General Statutes § 36a-771 (d). Our legislature has not found it necessary to protect consumers from entering into such contracts but has protected them only from *unknowingly* doing so.

Finally, it is well and firmly established that "[t]he rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984); accord *Greco* v. *Greco*, 275 Conn. 348, 354, 880 A.2d 872 (2005); *Krafick* v. *Krafick*, 234 Conn. 783, 806, 663 A.2d 365 (1995); *Fahy* v. *Fahy*, 227 Conn. 505, 515, 630 A.2d 1328 (1993); *Sunbury* v. *Sunbury*, 210 Conn. 170, 175, 553 A.2d 612 (1989); *Picton* v. *Picton*, 111 Conn. App. 143, 149–50, 958 A.2d 763 (2008), cert. denied, 290 Conn. 905, 962 A.2d 794 (2009); *Chyung* v. *Chyung*, 86 Conn. App. 665, 668, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005); *Quindazzi* v. *Quindazzi*, 56 Conn. App. 336, 339, 742 A.2d 838 (2000); *Cordone* v. *Cordone*, 51 Conn. App. 530, 533, 752 A.2d

reasonable expectation that the terms of a stipulated judgment will be enforced and (3) our Supreme Court's sparing invocation of public policy to prevent enforcement of a marital agreement or dissolution judgment.

1082 (1999); *Puris* v. *Puris*, 30 Conn. App. 443, 449, 620 A.2d 829 (1993); *Watson* v. *Watson*, 20 Conn. App. 551, 557, 568 A.2d 1044 (1990), rev'd in part on other grounds, 221 Conn. 698, 607 A.2d 383 (1992); *Daly* v. *Daly*, 19 Conn. App. 65, 70, 561 A.2d 951 (1989); *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 710, 533 A.2d 1226 (1987). Although these cases concern appeals from dissolution judgments crafted by the court, the principle they reiterate is no less true when the parties have negotiated an agreement. Indeed, stipulations for judgment often include very delicately balanced and carefully negotiated terms in the resolution of important family issues. General Statutes § 46b-66 (a) recognizes this delicate balance and requires courts either to accept or to reject those agreements in their entirety.[10] When the court approves of a stipulated judgment, it cannot later be set aside "unless the parties agree to do so or it is shown that the judgment was obtained by fraud, accident or mistake." *Bernet* v. *Bernet*, 56 Conn. App. 661, 666, 745 A.2d 827, cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000).

In the present case, the parties were both represented by counsel, they reached an agreement after a long negotiation period, and both testified that they participated actively in the negotiations and found the

---

[10] General Statutes § 46b-66 (a) provides in relevant part that in dissolution proceedings, "the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. *If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . .*" (Emphasis added.)

It is thus the court's duty to make an initial determination of whether the agreement is *fair and equitable* before incorporating it into the judgment of the court. In addition, when the parties submit a stipulation for the court's approval, it must either accept or reject the agreement as a whole. See *Bank of Boston Connecticut* v. *DeGroff*, 31 Conn. App. 253, 256, 624 A.2d 904 (1993).

agreement fair, reasonable and in line with their expectations. There is no argument that the plaintiff was unaware of the full consequences of failing to make the required payment. He testified that time was of the essence and that he could have to pay interest if the property settlement payments were overdue. Additionally, the court found that the challenged provision was clear and unambiguous. The plaintiff, as a result of his bargain, had the use of $7.5 million for one year. His financial affidavit at the time of the judgment showed an estate of nearly $80 million, and the $7.5 million represented less than 10 percent of his assets at the time of the judgment. It would appear that the plaintiff could have made that payment at the time of the judgment. Instead, the plaintiff, an investment banker, had the use of the money with the knowledge that he would lose the benefit of no interest for that year if he failed to pay the defendant on time.

Accordingly, we do not find that it is against the public policy of the state to allow such a provision in a judgment of dissolution incorporating a settlement agreement approved by the court as fair and equitable when the parties, represented by counsel, entered into the agreement with knowledge of its terms following a long period of negotiations.[11] Furthermore, even if the

---

[11] The dissent asserts that our decision "does not reveal either the legal or factual basis for [our] conclusion [but] focuses on certain public policy considerations favoring stipulated judgments in family cases." Although it is true that we focus on the policy considerations surrounding this case, we do that because the judgment of the trial court was that the provision was "*void against public policy.*" (Emphasis added.) Accordingly, we focus our analysis on the competing public policies of ordinary contract law and family law.

Contrary to the dissent's suggestion, we do not claim that the provision is one setting forth liquidated damages. If anything, the provision appears to set forth a discount for prompt payment. Regardless, however, we need not decide whether the provision sets forth a penalty or a discount because the best resolution of the competing policy interests on the facts of this stipulated dissolution judgment is that the provision should be enforced. In light of General Statutes § 36a-771 (d), it is not even clear that retroactive interest payments are considered as against the public policy of the state.

provision was otherwise violative of public policy, we note that "[t]he principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts. *Twin City Pipe Line Co.* v. *Harding Glass Co.*, 283 U.S. 353, 356, 357, 51 S. Ct. 476, 75 L. Ed. 1112 [1931]; 17 Am. Jur. 2d, Contracts, 174." (Internal quotation marks omitted.) *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 376–77, 321 A.2d 444 (1973). In the present case, considering the totality of the circumstances and current societal expectations,[12] public policy weighs in favor of enforcing the agreement.[13]

## II

The defendant also claims that the court, having previously found the parties' stipulation for judgment to

Certainly, in some circumstances, the legislature has determined that they are not against public policy. See General Statutes § 36a-771 (d).

The dissent cites only § 356 (1) of 3 Restatement (Second), Contracts (1981), which provides in relevant part: "A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." We note, however, that § 354 of the Restatement governs the imposition of interest as damages. Comment (a) of that section provides in relevant part: "If the parties have agreed on the payment of interest, it is payable not as damages but pursuant to a contract duty that is enforceable as is any other duty, subject to legal restrictions on the rate of interest." Id., § 354, comment (a).

Finally, despite the dissent's suggestion, we do not perceive the public policy against the enforcement of contract penalties "insignificant." In this case, we do not find the penalty, if any, to be impermissible. To the extent there are competing public policy considerations, the public policies in favor of enforcement outweigh the public policy against.

[12] See footnote 8.

[13] This opinion has not directly responded to each assertion of the dissent because the opinions speak for themselves; however, we disagree with the dissent's assertion that an opinion that enforces a judgment incorporating the bargained for provisions of a separation agreement increases "the level of uncertainty associated with marital dissolution judgments and decrease[s] the citizenry's confidence in its judiciary." See dissenting opinion, 413.

be fair and equitable, improperly refused to enforce one of its provisions. The defendant argues that the plaintiff induced the court's error,[14] if any, because he testified that the stipulation for judgment was fair and equitable and asked the court to incorporate it into the dissolution of marriage judgment. The plaintiff argues that the challenged provision is an unconscionable penalty clause and that the incorporation of the clause is void. We agree with the defendant.

At the dissolution hearing, the plaintiff requested that the court approve the stipulation for judgment as fair and equitable and incorporate the agreement into the dissolution judgment. He testified that he understood that time was of the essence and that he would be responsible for the payment of interest if his payment was late. The court found the stipulation for judgment fair and equitable and incorporated it into the dissolution judgment. The plaintiff now asks us to find that the parties' agreement included an unconscionable penalty clause. We find that the provision is not an unenforceable penalty. See part I of this opinion. Even if it were, however, this situation is in the nature of induced error. "Actions that are induced by a party ordinarily cannot be grounds for error. . . . A [party] can present a claim of relief from induced error only upon a showing that the error violated his constitutional rights." (Internal quotation marks omitted.) *Sachs* v. *Sachs*, supra, 60 Conn. App. 345; see also *Martin* v. *Martin*, 101 Conn.

---

[14] The defendant has not raised the related issue of judicial estoppel, and we therefore do not address it. We note that there are two elements to the doctrine of judicial estoppel: "First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner. *Bates* v. *Long Island* [*Railroad*] *Co.*, 997 F.2d 1028, 1038 (2d Cir.), cert. denied, 510 U.S. 992, 114 S. Ct. 550, 126 L. Ed. 2d 452 (1993)." (Internal quotation marks omitted.) *SKW Real Estate Ltd. Partnership* v. *Mitsubishi Motor Sales of America, Inc.*, 56 Conn. App. 1, 8 n.6, 741 A.2d 4 (1999), cert. denied, 252 Conn. 931, 746 A.2d 793 (2000).

App. 106, 120 n.7, 920 A.2d 340 (2007). Although ordinarily, claims of induced error arise at the appellate level, we see no reason for trial courts to employ a different standard when they are presented with a collateral attack on a judgment. The plaintiff claims no constitutional violation, and, therefore, the court improperly refused to enforce the challenged provision.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion BORDEN, J., concurred.

BORDEN, J., concurring. I agree with the majority opinion that the judgment should be reversed and the case remanded for further proceedings according to law. I reach that result, however, by a somewhat different route from that of the majority. In sum, because this is a family dissolution case, involving an obviously financially sophisticated plaintiff, in which both parties were represented by sophisticated domestic relations attorneys, who reached a settlement of their complicated financial affairs that was approved by the court, I would hold the plaintiff, Brady Dougan, to the terms of the agreement.

I first point out several facts that are not in dispute. First, the provision at issue in the case is, as the dissenting opinion points out, clear and unambiguous in providing for interest to be paid in the event of untimely payment, not from the date on which the payment was due but from the date of the stipulation between the parties. Indeed, in his memorandum of law in the trial court, the plaintiff stated that he "admits that the contract provides what it provides: that the [p]laintiff is required to make a payment of 10 [percent] interest, dated back to June 17, 2005, if the June 16, 2006 payment is late. The [p]laintiff does not argue that the agreement

is clear and unambiguous in its terms."[1] Moreover, the plaintiff does not contend in this court that the agreement was ambiguous or that it permitted a construction requiring interest from the date the payment was due, rather than from the date of the agreement. His sole claim here, as it was in the trial court, is that the provision is unenforceable as a penalty.

Second, the plaintiff has never contended, either in the trial court or in this court, that he did not understand that he was required by the agreement to make the payment on June 16, 2006, and that according to the terms of the agreement, a late payment would obligate him to pay interest, not from that due date, but from the date of the agreement. Indeed, in the trial court the plaintiff, in his memorandum of law, stated that he "does not argue that he had a 'good excuse' for failing to pay the required payment on the required day. The [p]laintiff admits that he unwittingly (not willfully) failed to make the required payment of $7,500,000 on June 16, 2006, and instead made the payment on June 28, 2006."

Third, at the parties' dissolution hearing on June 17, 2005, the plaintiff acknowledged in his testimony, designed to persuade the court to approve the agreement as reasonable, that although the agreement had been signed by the parties only the day before, namely, June 16, 2005, "the issues involved in the agreement ha[d] been on the table between [him] and [the defendant, Tomoko Hamada Dougan] for well over

---

[1] Although it might be possible to read this statement as a somewhat backward way of contending that the agreement is *not* clear and unambiguous, it is crystal clear from the entire context of the plaintiff's legal arguments to the trial court that what he meant by this sentence is that he admits that the agreement is clear and unambiguous. In other words, the plaintiff's entire argument in the trial court, as it is in this court, was that, even given that the provision clearly and unambiguously called for interest from the date of the agreement, it was unenforceable as a penalty.

a year." He also acknowledged that he had had an ample opportunity to consider all of the issues involved in the agreement, specifically "including financial issues," that "every agreement by its nature is a compromise in which one gives up something in order to get something else," that he was "familiar with each and every clause" of the agreement, and that he was satisfied that the agreement, taken as a whole, was fair and reasonable. Furthermore, with respect to the specific provision at issue in this appeal, he testified that it was his "intention to secure a letter of credit or some other equivalent type of security *by placing assets into an escrow account so that there will be adequate security for the second installment.*"[2] (Emphasis added.) Finally, the defendant testified that the agreement had been reached "after two days of mediation with" an experienced family law practitioner and that the agreement "was one of about three or four prior drafts."

Fourth, as the record discloses, this provision is part of a lengthy, complicated and carefully crafted dissolution agreement, involving great sums of money, as well as matters of child custody and visitation, which was approved by the court after testimony by both parties that they consented and agreed to it. Moreover, it cannot

---

[2] Thus, the dissent's disagreement with the majority over whether the plaintiff had the use of the $7.5 million, for the period from the date of the agreement, is misguided and does not involve this court in fact-finding. It does not require testimony or fact-finding for this court to determine that with respect to the period from June, 2005, to June, 2006, the plaintiff, rather than the defendant, had the benefit of that sum—for example, by way of having either cash or some other assets in an escrow account, on which he, rather than the defendant, would undoubtedly get the interest. Additionally, even if he chose to borrow to make the payment, it meant that he did not have to borrow until the payment date. Thus, no matter how one looks at it, the plaintiff had the use of the money from the date of the agreement to the due date of the payment. Indeed, this recognition is routine in courts' determination of interest. See, e.g., *Niles* v. *Niles*, 15 Conn. App. 718, 721, 546 A.2d 329 (1988) (imposing interest for time period in which plaintiff had "use of the money" to which defendant was entitled).

be denied that this provision is highly unusual, calling as it does for retroactive interest if the payment is untimely. The conclusion is inescapable that the parties must have focused at least some of their attention on it.[3]

Fifth, the plaintiff is a highly educated and financially sophisticated person. He is a graduate of the University of Chicago and received a master's of business administration degree from the same university. At the time of the dissolution hearing, he was employed by a well known investment banking firm and had a monthly net income (even after more than $3100 in deductions for 401 [k] accounts) of more than $1 million, and total assets of $77,420,050. Finally, an examination of the trial court record discloses that both parties were represented by sophisticated and experienced domestic relations attorneys of high regard; indeed, the plaintiff was

[3] Indeed, one could almost conclude that the most likely explanation of this provision is that the defendant wanted one lump sum payment of approximately $15 million at the time of the dissolution, whereas the plaintiff wanted to delay payment of at least part of the lump sum, and that the compromise was the provision as drafted: approximately one half of the lump sum would be delayed for one year but interest would run retroactively if the payment were untimely. This conclusion, however, would probably have required some testimony from the negotiating parties, including the mediator, and the plaintiff did not introduce such testimony. Therefore, I cannot base my decision on that possibility.

Nonetheless, the conclusion that the parties must have focused their attention on this highly unusual interest provision also undermines the dissent's interpretation of the plaintiff's testimony regarding the provision. That testimony was that the plaintiff understood that time was of the essence and that in the event of default, "at that point, interest can be imposed." The dissent interprets this as merely an understanding by the plaintiff that interest would be imposed beginning on the date of the breach, not on the date of the agreement. To me, it simply defies common sense to say that the financially sophisticated plaintiff, represented by an experienced domestic relations lawyer, negotiating a financially sophisticated marital dissolution agreement, involving millions of dollars, and testifying that as to the payment in question, time was of the essence, did not know that the interest being imposed "at that point" was the interest called for by the explicit terms of the agreement. Indeed, this inescapable conclusion is buttressed by the plaintiff's explicit concession in the trial court in these postjudgment proceedings that the provision at issue means what it says but is legally unenforceable.

represented by the same attorney who represents him in this appeal.[4]

With this factual background in mind, I turn to what I regard as the appropriate legal principles that govern the defendant's appeal. Those principles persuade me that under the particular circumstances of this case, the agreement should be enforced as negotiated by the parties and as presented to and approved by the court.

I begin by noting my agreement with the general legal principles regarding contractual penalty provisions propounded by the dissenting opinion. If this were a purely commercial case, I would be compelled to agree that the provision at issue constitutes a penalty, rather than a liquidated damages clause, and would be unenforceable as a matter of public policy. There are in this case, however, competing public policies that, in my view, outweigh those at work in commercial cases.

"Our cases have recognized that the special concerns that arise in the context of family cases may sometimes justify a departure from the rules that ordinarily apply to other civil disputes. See, e.g., *Billington* v. *Billington*, 220 Conn. 212, 595 A.2d 1377 (1991) (party seeking to open marital judgment on basis of fraud need not establish diligence in attempting to discover fraud); *Monroe* v. *Monroe*, 177 Conn. 173, 182–83, 413 A.2d 819, [cert. denied], 444 U.S. [801], 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979) ('Analogies drawn from commercial litigation fail to respond adequately to the situation of emotional trauma commonly associated with the irretrievable breakdown of a marriage. . . . [L]awyers who represent clients in matrimonial dissolutions have a special

[4] It is disconcerting to me that the same attorney who participated in the extensive negotiations and mediation that resulted in the provision at issue now argues, only approximately two and one-half years later, that it is legally unenforceable. If it is so clear now, as he contends, presumably he may at least have suspected so when it was negotiated and presented to the court as fair and reasonable. This is unseemly, to say the least.

responsibility for full and fair disclosure, for a searching dialogue, about all of the facts that materially affect the client's rights and interests.' [Citations omitted.]); see also *Baker* v. *Baker*, 187 Conn. 315, 445 A.2d 912 (1982); *O'Bymachow* v. *O'Bymachow*, 12 Conn. App. 113, 118–19, 529 A.2d 747, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987); *Grayson* v. *Grayson*, 4 Conn. App. 275, 494 A.2d 576 (1985), appeal dismissed, 202 Conn. 221, 520 A.2d 225 (1987)." *Mulholland* v. *Mulholland*, 229 Conn. 643, 650–51, 643 A.2d 246 (1993).

Moreover, our courts have long recognized, as the majority opinion persuasively demonstrates, "our strong policy that the private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine. *Baker* v. *Baker*, supra, [187 Conn.] 322; *Hayes* v. *Beresford*, 184 Conn. 558, 568, 440 A.2d 224 (1981); *Lavigne* v. *Lavigne*, 3 Conn. App. 423, 426, 488 A.2d 1290 (1985); *Grayson* v. *Grayson*, supra, [4 Conn. App.] 299. That goal requires, in turn, that reasonable settlements have been knowingly agreed upon. *Monroe* v. *Monroe*, supra, [177 Conn.] 184." (Internal quotation marks omitted.) *Billington* v. *Billington*, supra, 220 Conn. 221.

Application of these well established principles of family law leads me to conclude that similar justifications for departing from commercial principles are present in this case. See *Mulholland* v. *Mulholland*, supra, 229 Conn. 651. The provision at issue is clear and unambiguous. The plaintiff admits that he knew what it meant. It was part of a complicated and carefully crafted dissolution agreement, involving millions of dollars, arrived at after long negotiations and mediation by experienced and sophisticated family lawyers, which was approved by the court. And the plaintiff, who wants to avoid the obligation that he knowingly undertook, is a highly educated and financially sophisticated person.

Under this unique combination of circumstances, I conclude that the ordinary public policy against enforcement of penalties in a contract must yield to the public policy of enforcing dissolution settlements that are freely and fairly entered into.

I agree with the majority, therefore, that the trial court's judgment should be reversed and the case remanded to the trial court for further proceedings according to law.

GRUENDEL, J., dissenting. The case that the majority decides today is not the case that the parties tried or appealed, and it is not the case that the trial court decided. In its effort to graft new standards for the enforcement of marital contracts, the majority departs from centuries of binding precedent and seeks to create new yet unworkable decisional law. Accordingly, I respectfully dissent.

One of the most fundamental principles of the law of contracts is that courts will not enforce penalties—even when they are agreed to by the parties, even when they are disguised as something else. "[T]he parties to a contract are not free to provide a penalty for its breach." 3 Restatement (Second), Contracts § 356, comment (a), p. 157 (1981). Both the majority and concurring opinions recognize this principle. The majority opinion concludes that it does not apply to this particular contract because of other, overriding policy considerations, while the concurrence concludes that in a commercial case it would find the relevant provision an unenforceable penalty, but not in this marital case. I disagree with each. The provision at issue cannot be characterized as anything but a penalty, and there is no controlling case that says a penalty is permitted in a marital contract. As such, I would affirm the well

reasoned opinion of the trial court declining to enforce the clause at issue because it was an improper penalty.

The facts at issue are not in dispute, and the only facts relevant to the appeal by the defendant, Tomoko Hamada Dougan, are as follows. The marriage of the plaintiff husband, Brady Dougan, to the defendant wife was dissolved on June 17, 2005. In its judgment of dissolution, the court incorporated by reference the parties' stipulation for judgment. That stipulation included a provision, paragraph 4.2 (b), which provided in relevant part: "The [plaintiff] shall pay the [defendant] the sum of . . . [s]even million five hundred thousand ($7,500,000) dollars on or before June 16, 2006. . . . In the event payment is not made when due, interest at ten [percent] (10%) per annum shall accrue from the date *hereof* until fully paid . . . ." (Emphasis added.) The plaintiff paid the defendant $7.5 million on June 28, 2006. On July 12, 2006, the plaintiff made a further payment of $24,999.96, representing interest on the $7.5 million sum for the twelve days between June 16 and June 28.[1]

---

[1] The majority opinion makes the following finding of fact: "The plaintiff, as a result of his bargain, had the use of $7.5 million for one year. . . . It would appear that the plaintiff could have made that payment at the time of the judgment. Instead, the plaintiff, an investment banker, had the use of the money with the knowledge that he would lose the benefit of no interest for that year if he failed to pay the defendant on time." Majority opinion, 388. I am at a loss to explain how this court can determine the "knowledge" that the plaintiff possessed as he "used" the money, or even whether he "used" it at all. The trial court did not find any such fact in its thorough memorandum of decision. The defendant did not argue that fact in her briefs to the trial court or this court, and neither party testified at the postjudgment hearing before Judge Novack. There simply is no evidence anywhere in the record to support the factual conclusions reached in the majority opinion. It is elemental that as an appellate court, we "cannot find facts or draw conclusions from primary facts found, but may only review such findings to see whether they might be legally, logically and reasonably found. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Citations omitted; internal quotation marks omitted.) *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 543, 651 A.2d 1302 (1995).

In addition, the majority opinion makes much of the fact that the plaintiff testified at the original dissolution hearing that time was of the essence. The plaintiff's testimony, however, is entirely immaterial. No time is of the

On September 7, 2006, the defendant filed a motion for contempt, seeking payment of interest on the full sum from June 16, 2005, the date that the court rendered judgment, to June 28, 2006, the date that payment was made. She later filed a motion for enforcement of the judgment of dissolution, seeking the same substantive relief, and withdrew her motion for contempt. The court denied the defendant's motion, holding that the provision at issue was a penalty and thus invalid as against public policy. The defendant appealed from that judgment.

The only issue on appeal is whether the clause at issue is a valid provision for liquidated damages or a penalty in violation of public policy and centuries of

---

essence clause was inserted into the contract. The intentions of the parties not expressed in the four corners of the written agreement are not admissible to vary the terms of an unambiguous contract, as this one was found to be. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . [I]n determining the intent of the parties to the agreement, we are limited to the language of the contract and the parties' intent as expressed therein." (Internal quotation marks omitted.) *Davis* v. *Davis*, 112 Conn. App. 56, 64, 962 A.2d 140 (2009). If, however, the majority insists upon looking outside of the four corners of the agreement, it should represent the plaintiff's testimony in its entirety. At the original dissolution hearing, the plaintiff was questioned by his attorney:

"[The Plaintiff's Counsel]: And further, you understand that time is of the essence. If there is a default in the timeliness of the payments, at that point, interest can be imposed?

"[The Plaintiff]: That's right."

This exchange illustrates that the plaintiff's understanding of the date from which interest would run may not be as clear as the majority opinion implies.

The plaintiff's testimony regarding his understanding that time was of the essence is irrelevant to our consideration of the present appeal for another reason. Even if we assume arguendo that a time is of the essence clause was integrated into the stipulated judgment, such clauses affect only whether failure to perform within the specified time constitutes a material breach, i.e., whether failure of one party to perform by a date certain wholly relieves the other party from the duty to perform under the agreement. *Banks Building Co., LLC* v. *Malanga Family Real Estate Holding, LLC*, 102 Conn. App. 231, 238, 926 A.2d 1 (2007); see also 15 S. Williston, Contracts (4th Ed. Lord 2000) §§ 46:1 through 46:3, pp. 390–405. There is no question regarding the parties' duties to perform in the present case; the only issue is the amount of damages for failure to do so. Consequently, whether time was of the essence has no bearing on the disposition of the case.

established contract doctrine.[2] To reach the conclusions that I have, however, it is necessary first to review the law of stipulated judgments as it relates to that of contracts.

## I

### STIPULATED JUDGMENT AS CONTRACT

The law in Connecticut is well established: a stipulated judgment is a contract and must be analyzed in accordance with the law of contracts. See *Davis* v. *Davis*, 112 Conn. App. 56, 63, 962 A.2d 140 (2009); *Town Close Associates* v. *Planning & Zoning Commission*, 42 Conn. App. 94, 107–108, 679 A.2d 378, cert. denied, 239 Conn. 914, 682 A.2d 1014 (1996); *Zadravecz* v. *Zadravecz*, 39 Conn. App. 28, 30–31, 664 A.2d 303 (1995). "A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction." (Citations omitted; internal quotation marks omitted.) *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990), citing *Owsiejko* v. *American Hardware Corp.*, 137 Conn. 185, 187, 75 A.2d 404 (1950); *New York Central & Hudson River Railroad Co.* v. *T. Stuart & Son Co.*, 260 Mass. 242, 248, 157 N.E. 540 (1927); *In re Director of Ins.*, 141 Neb. 488, 496, 3 N.W.2d 922 (1942); *Dulles* v. *Dulles*, 369 Pa. 101, 107, 85 A.2d 134 (1952); see also *Bryan* v. *Reynolds*, 143 Conn. 456, 460–61, 123 A.2d 192 (1956). "A judgment rendered in accordance with such a stipulation of the parties is to be regarded and construed as a contract. See *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980); *Albrecht* v. *Albrecht*, 19 Conn. App. 146, 152, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989)."[3] (Internal

---

[2] I remain convinced it is the latter, while the majority opinion does not address the issue.

[3] The defendant argues, and the majority opinion suggests; see majority opinion, 387 n.10; that the contract should be afforded deference because the court previously determined that it was "fair and equitable." This is

quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999), quoting *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990); see also, e.g., *Hi-Desert County Water District* v. *Blue Skies Country Club, Inc.*, 23 Cal. App. 4th 1723, 1732, 28 Cal. Rptr. 2d 909 (1994), review denied, Docket No. SO39673, 1994 Cal. LEXIS 3408 (Cal. June 23, 1994); *19th Street Associates* v. *State*, 79 N.Y.2d 434, 442, 593 N.E.2d 265, 583 N.Y.S.2d 811 (1992); *Lower Frederick Township* v. *Clemmer*, 518 Pa. 313, 328–29, 543 A.2d 502 (1988). By declining to treat the stipulated judgment in this case as a contract to be interpreted under contract law, my colleagues depart from that binding precedent.

Because stipulated judgments are regarded as contracts, this court's standard of review and the principles that govern our disposition of the present appeal must be gleaned from contract law. *Issler* v. *Issler*, supra, 250 Conn. 235. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 313, 948 A.2d 318 (2008). "If a contract is unambiguous within its four corners, intent of the parties is a

simply not the case. The law is clear that a stipulated judgment does not constitute a judicial determination of litigated rights. See, e.g., *Reichenbach* v. *Kraska Enterprises, LLC*, 105 Conn. App. 461, 475, 938 A.2d 1238 (2008). There is no support for the proposition that simply because a judge found the agreement to be fair and equitable, it should be treated as anything other than a contract between the parties and interpreted as such. Stipulated judgments are approved by our courts on a regular basis; that does not affect the fact that they are construed and applied according to the principles of contract law. Indeed, our Supreme Court has recognized that the trial court is not necessarily in the best position to determine that a stipulated judgment is fair and equitable, and that such determinations are fallible. See, e.g., *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 176, 646 A.2d 195 (1994) ("the dissolution court may be unable to elicit the information necessary to make a fully informed evaluation of the settlement agreement").

question of law requiring plenary review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 744, 945 A.2d 936 (2008). Because there is no question that the language of the stipulated judgment is clear and unambiguous, and was so found by the trial court, the plenary standard of review applies to its construction. In addition, whether a contract provision violates public policy is a question of law subject to plenary review. *LaSalla* v. *Doctor's Associates, Inc.,* 278 Conn. 578, 586, 898 A.2d 803 (2006); *Texaco, Inc.* v. *Golart*, 206 Conn. 454, 461, 538 A.2d 1017 (1988); *Joyner* v. *Simkins Industries, Inc.,* 111 Conn. App. 93, 97, 957 A.2d 882 (2008).

## II

## UNENFORCEABLE PENALTY

The purpose of contract damages is to put the parties in the position they would have occupied had the contract been performed according to its terms. *Sablosky* v. *Sablosky*, 72 Conn. App. 408, 416, 805 A.2d 745 (2002). "The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy." 3 Restatement (Second), supra, § 356, comment (a), p. 157. "Ordinarily, when a court concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract. It does this by attempting to put him in as good a position as he would have been in had the contract been performed, that is, there had been no breach. . . . It is sometimes said to give the injured party the 'benefit of the bargain.' " Id., § 344, comment

(a), p. 103. "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action 'should place the injured party in the same position as he would have been had the contract been performed.' *Rametta* v. *Stella*, 214 Conn. 484, 492, 572 A.2d 978 (1990). The injured party, however, 'is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain.' *Vines* v. *Orchard Hills, Inc.*, 181 Conn. 501, 507, 435 A.2d 1022 (1980). Guarding against excessive compensation, the law of contract damages limits the injured party 'to damages based on his actual loss caused by the breach.' " *Argentinis* v. *Gould*, 219 Conn. 151, 157–58, 592 A.2d 378 (1991).

It is true that "[t]he parties to a contract may effectively provide in advance the damages that are to be payable in the event of a breach as long as the provision does not disregard the principle of compensation. The enforcement of such provisions for liquidated damages saves the time of courts, juries, parties and witnesses and reduces the expense of litigation." 3 Restatement (Second), supra, § 356, comment (a), p. 157. That ability of the parties to provide for damages in advance of breach, however, is limited. "[T]he law is well established in this jurisdiction, as well as elsewhere, that a term in a contract calling for the imposition of a penalty for the breach of the contract is contrary to public policy and invalid . . . ." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 203, 931 A.2d 916 (2007), citing *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, 273 Conn. 296, 306, 869 A.2d 1198 (2005). The majority opinion suggests that it is nevertheless possible for a contract to contain an *enforceable* clause calling for the payment of a penalty. There is simply no support for this proposition anywhere in our case law or the Restatement. Cf. *Berger* v. *Shanahan*, 142 Conn. 726,

731–32, 118 A.2d 311 (1955) (contract term calling for imposition of penalty invalid).

Thus, our courts will not enforce a provision that provides the nonbreaching party with a greater benefit than that which reasonably was expected from performance of the contract at the time the contract was entered into. See *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, supra, 273 Conn. 306–307. Such a provision violates the economic purposes of contracts and, as such, is unenforceable. Id. This remains so even when a contract or stipulated judgment containing such a provision is negotiated at arms length and freely entered into by the parties, and it is so regardless of what the provision is called by the parties. *New Britain* v. *New Britain Telephone Co.*, 74 Conn. 326, 332, 50 A. 881 (1902). Conversely, when a provision is intended "to fix fair compensation to the injured party for a breach of the contract," it will be enforced by our courts as a liquidated damages clause. *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, supra, 306.

Our Supreme Court has set forth a test for determining whether a contract provision calls for payment of an impermissible penalty. "In determining whether any particular provision is for liquidated damages or for a penalty . . . that which is determinative of the question is the intention of the parties to the contract. Accordingly, such a provision is ordinarily to be construed as one for liquidated damages if three conditions are satisfied: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would

be sustained by the contractee in the event of a breach of the contract." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 203, quoting *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, supra, 273 Conn. 306–307; accord *Banta* v. *Stamford Motor Co.*, 89 Conn. 51, 55, 92 A. 665 (1914).[4]

In applying this test, it is important to note the fundamental and long-standing precept of contract law that, in the event of a breach of a contract for a sum certain, interest on that sum is calculated from the date of breach. *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 321–22, 541 A.2d 858 (1988); *Wells* v. *Abernethy*, 5 Conn. 222, 228 (1824) ("[I]nterest from the date of the contract, was entirely inadmissible. The cause of action originated sometime posterior to the entering into the agreement, upon demand made by the plaintiff, succeeded by the defendant's non-performance; and from this period only could the interest be allowed."); 3 Restatement (Second), supra, § 354 (1), p. 150 ("[i]f the breach consists of a failure to pay a definite sum in money . . . interest is recoverable from the time for performance on the amount due"); id., comment (b), p. 151 ("Interest is not payable as damages for non-performance until performance is due. If there is a period of time before performance is due, such as a definite or indefinite period of credit, interest does not begin to run until the period is over.").[5] The

---

[4] It is interesting to note that this test dates back to 1914 when our Supreme Court decided *Banta* v. *Stamford Motor Co.*, supra, 89 Conn. 51. That opinion was among the first (if not *the* first) delineating the specific test used today for determining whether a contractual provision provided an unenforceable penalty. See 3 E. Farnsworth, Contracts (3d Ed. 2004) § 12.18, p. 305.

[5] The majority opinion cites § 354 of the Restatement (Second) of Contracts with apparent approval. The majority opinion's citation of comment (a), however, has little bearing on the dispute at issue. Rather, the text of the section itself and comment (b) make very clear that interest accrues *not from the date that the contract is entered into, but rather from the date that performance is due.* See majority opinion, 389 n.11.

provision at issue called for the payment of a sum certain on a date certain: "The [plaintiff] shall pay the [defendant] the sum of . . . [s]even million five hundred thousand ($7,500,000) dollars on or before June 16, 2006." Even at the time that the parties entered into the contract, the defendant's potential damages resulting from the plaintiff's failure to perform in a timely manner would have been in no way uncertain or difficult to prove. The formula for the damages to the defendant would be interest[6] on $7.5 million for the time between the date payment was due to the defendant and the date actually paid.[7] This formula would have been as simple to contrive and as easy to calculate on the date of the stipulated judgment as it is today. I therefore conclude that the provision is a penalty under the first prong of the *Bellemare* and *American Car Rental, Inc.*, test in that the expected damages were neither uncertain in amount nor difficult to prove.

Nonetheless, the provision went on to state: "In the event payment is not made when due, interest at ten [percent] (10%) per annum shall accrue from the date *hereof* until fully paid . . . ." (Emphasis added.) That provision is the very epitome of a penalty. In the words of *American Car Rental, Inc.*, it is "[a] contractual provision . . . the prime purpose of which is to prevent a breach of the contract by holding over the head of a contracting party the threat of punishment for a breach." (Internal quotation marks omitted.) *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, supra, 273 Conn. 306; accord 24 S. Williston, Contracts (4th Ed. Lord 2002) § 65:1, pp. 216–23 ("a liquidated damages provision will be held to violate

---

[6] The rate of interest is not at issue in the present case because it is the same as that set forth in General Statutes §§ 37-3a (a) and 52-350f— 10 percent.

[7] I reiterate that the plaintiff paid this amount ($24,999.96) to the defendant.

public policy, and hence will not be enforced, when it is intended to punish, or has the effect of punishing, a party for breaching the contract, or [creates] a large disparity between the amount payable under the provision and the actual damages likely to be caused by a breach, so that it in effect seeks to coerce performance of the underlying agreement by penalizing non-performance and making a breach prohibitively and unreasonably costly"). Consequently, it is my view that the provision also constitutes a penalty under the third prong of the *Bellemare* and *American Car Rental, Inc.*, test. Because the damages set forth in the stipulated judgment are so grossly disproportionate to the defendant's actual damages, they are wholly unreasonable in violation of public policy.

The majority opinion correctly points out that parties to a contract may bargain for a discount under certain circumstances.[8] Majority opinion, 386. Such bargains must, nonetheless, meet the three requirements set forth in *American Car Rental, Inc.*, to be enforceable. The clause at issue may indeed have the effect of encouraging prompt performance, as the majority opinion suggests. "But the argument is a tacit admission that the provision was included not to make a fair estimate of damages to be suffered but to serve only as an added spur to performance. It is well settled contract law that courts do not give their imprimatur to such agreements." *Priebe & Sons, Inc.* v. *United States*, 332 U.S. 407, 413, 68 S. Ct. 123, 92 L. Ed. 32 (1947).

The potential damages resulting from a breach of the agreement to pay $7.5 million on a specified date could be neither uncertain nor difficult to prove. In my view,

---

[8] The majority opinion finds support for this proposition in General Statutes § 36a-771, which applies to retail installment contracts. This stipulated judgment is not a retail installment contract and has not been characterized as one by the parties or the trial court. I therefore question whether reference to that statute is relevant to this case.

the trial court properly refused to enforce the clause calling for payment of 10 percent interest on the $7.5 million from the date the stipulation was executed on the ground that it violated the rule against the enforcement of penalties.

## III

## PUBLIC POLICY

### A

### Policy Propounded by the Majority Opinion

The majority opinion does not reveal either the legal or factual basis for its implicit conclusion that the contract provision is not an unenforceable penalty—although that question was the only issue presented on appeal. Rather, it focuses on certain public policy considerations favoring stipulated judgments in family cases.[9] Regarding the first of these public policies, the majority opinion states: "[T]he government has an interest in preserving and enforcing orders that were entered by the courts in dissolution proceedings after a determination that the judgment is fair and equitable. . . . This conserves judicial resources because the courts are not forced to rework decrees to account for newly raised postjudgment arguments that are based on public policy." (Citation omitted.) Majority opinion, 385. Although that statement standing alone is irrefutable,

---

[9] The majority opinion notes that it focuses on public policy considerations because the trial court's judgment was based on its determination that the provision at issue was "void against public policy." (Internal quotation marks omitted.) Majority opinion, 388 n.11. The trial court's invocation of public policy was not, however, based on a generic policy consideration that it was entitled to weigh against other policy considerations. Rather, it was based on a specific policy that has been a hallmark of binding contract law for centuries. See, e.g., *New Britain* v. *New Britain Telephone Co.*, supra, 74 Conn. 332 (decided in 1902); *Tayloe* v. *Sandiford*, 20 U.S. (7 Wheat.) 13, 17, 5 L. Ed. 384 (1822); *Davis* v. *Freeman*, 10 Mich. 188 (1862); *Orr* v. *Churchill*, 126 Eng. Rep. 131, 1 Blackstone (H.) 227 (C.P. 1789).

it is not sufficient to overrule the well established principle that stipulated judgments are contracts and are to be interpreted in accordance with the established principles of contract law. See *Davis* v. *Davis*, supra, 112 Conn. App. 63; see also part I of this opinion.

The analysis of a stipulated judgment in accordance with such principles is mandated, even when something arises that is, in the majority's view, as insignificant as the public policy against the enforcement of contract penalties. Only when the public has confidence that the judiciary will resolve conflicts in accordance with established principles of relevant law, will the public have confidence that their contracts and stipulated judgments will be treated appropriately and their transactions governed with predictability. If parties cannot be certain that their separation agreements will be interpreted in the same way as other contracts, they will not enter into them. Preserving judicial resources is not a sufficient reason for abandoning the long-standing principles of contract law.

In its public policy analysis, the majority opinion also reasons that "[t]he rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984) . . . ." (Citations omitted; internal quotation marks omitted.) Majority opinion, 386. The mosaic rule, however, is *not* a principle governing the interpretation of contracts or stipulated judgments. Rather, it is a standard of appellate review in dissolution cases. Cf., e.g., *Chyung* v. *Chyung*, 86 Conn. App. 665, 668, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005). Its purpose is to help appellate courts determine the scope of a trial court's error— whether an error in crafting a single provision in a dissolution judgment renders the entirety of the judgment or financial orders improper. Sometimes an entire

case must be retried because this court has determined that the orders are so intertwined that one cannot be changed without consideration being given to changing others. See, e.g., *Dietter* v. *Dietter*, 54 Conn. App. 481, 496–97, 737 A.2d 926, cert. denied, 252 Conn. 906, 743 A.2d 617 (1999). At other times, the order that an appellate court has determined to be improper is not so intertwined with other orders as to require a retrial of all financial issues. See, e.g., *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 710–11, 533 A.2d 1226 (1987). To make the mosaic rule into a principle of contract interpretation eviscerates the law of contracts. Moreover, by applying the mosaic rule to the facts of the present case, the majority opinion would create new law that will soon give way to a judicially recognized presumption that stipulated judgments in family cases never can be reviewed. That is not the law, and it should not become the law.

B

Policy Propounded by the Concurring Opinion

The concurring opinion concludes that the general rule disallowing penalty clauses in contracts may be relaxed or completely abandoned in dissolution of marriage cases. I fail to see why, and I fail to see how. As recently as last year, our Supreme Court reaffirmed the proposition that when separation agreements are incorporated into dissolution decrees, they are "guided by the general principles governing the construction of contracts." (Internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008). And as recently as two weeks ago, this court again held that in family cases, "[a] judgment rendered in accordance with [a] stipulation of the parties is to be regarded and construed as a contract." (Internal quotation marks omitted.) *Barber* v. *Barber*, 114 Conn. App. 164, 168, 968 A.2d 981 (2009). I do not believe it is wise, nor do

I believe we are empowered, to alter or depart from that long-standing rule.

In support of its conclusion that stipulated judgments in dissolution cases may be regarded differently from other contracts, the concurring opinion cites *Billington* v. *Billington*, 220 Conn. 212, 595 A.2d 1377 (1991). The issue in that case was: "To prevail on a motion to open a judgment based on fraud, must the movant in a marital case establish diligence in attempting to discover fraud?" (Internal quotation marks omitted.) Id., 214 n.1. The court based its decision not to require a showing of diligence on the "special relationship between fiduciary and beneficiary [that] compels full disclosure by the fiduciary. . . . Although marital parties are not necessarily in the relationship of fiduciary to beneficiary, we believe that no less disclosure is required of such parties when they come to court seeking to terminate their marriage." (Citation omitted.) Id., 221. Similarly, in *Monroe* v. *Monroe*, 177 Conn. 173, 183, 413 A.2d 819, cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979), also cited in the concurring opinion, the court's holding was based on a similar unique duty imposed on attorneys in matrimonial dissolutions for "full and fair disclosure . . . ."

These cases resolved issues unique to marriage dissolutions on the basis of the unique nature of the marital relationship and the unique duties between parties. On the other hand, in the present case, there is no claim that the unique duties between the plaintiff and the defendant were implicated or breached. The only distinction that the concurring opinion claims exists between the present case and a commercial contract action is "our strong policy that the private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine." (Internal quotation marks omitted.) Concurring opinion, 396, quoting *Billington* v. *Billington*, supra, 220

Conn. 221. No such distinction exists at all. Indeed, both our statutes and case law demonstrate a preference for encouraging settlement in *all* civil cases. See General Statutes § 52-192a; *Alexson* v. *Foss*, 276 Conn. 599, 606–607, 887 A.2d 872 (2006) ("well-defined public policies . . . favor arbitration as an alternate dispute mechanism, as well as the settlement of disputes"); *McCullough* v. *Waterside Associates*, 102 Conn. App. 23, 32, 925 A.2d 352 ("[t]he purpose of § 52-192a is to encourage pretrial settlements . . . in any civil action based upon contract or seeking the recovery of money damages" [internal quotation marks omitted]), cert. denied, 284 Conn. 905, 931 A.2d 264 (2007). Consequently, I see no reason why the clause at issue in the present case should be treated differently from that in any other civil action, which the concurrence aptly notes "would be unenforceable as a matter of public policy."[10] Concurring opinion, 395.

## C

### Countervailing Policy

I do not believe that this court should be in the business of crafting public policy. Rather, I believe that our

---

[10] I find it interesting that the concurring opinion bases its reasoning, in part, on evidence that "the plaintiff is a highly educated and financially sophisticated person," and that "both parties were represented by sophisticated and experienced domestic relations attorneys . . . ." Concurring opinion, 394–95. It seems counterintuitive that our courts would permit such individuals to enforce contract clauses that violate well established principles of law because they are sufficiently sophisticated while at the same time refusing to enforce the similar clauses entered into by sophisticated business entities in agreements involving huge sums of money. See, e.g., *In re Dow Corning Corp.*, 419 F.3d 543 (6th Cir. 2005) (in action by Bear Stearns against Dow Corning Corporation to enforce terms of settlement agreement calling for payment of $17 million, court held that clause calling for payment $8.75 million in "liquidated damages" for failure to pay timely was unenforceable penalty); *In re Northwest Airlines Corp.*, 393 B.R. 352 (Bankr. S.D.N.Y. 2008) (clause in contract between commercial airline and airplane lessor calling for payment of $7.5 million in "liquidated damages" for value of airplane was unenforceable).

function is more narrow: to apply controlling law to the facts found by the trial court. Nevertheless, the result that the majority reaches flows directly from the policy determinations set forth in the majority and concurring opinions. Thus, despite some reluctance, I am compelled to briefly note the policy considerations that inform my own differing view.

The parties that utilize our courts to resolve their marital differences are not merely litigants—they are citizens. They do not work for us, but we for them. Our courts do not and should not serve as their parents, their therapists or their counselors. We are charged with applying the law to their cases uniformly and in the same manner in which we apply it to cases involving corporations, the government and those individuals accused of crimes. The concurring opinion states that were this case one involving corporations, it would find the relevant clause to be a penalty, but not in a marital case. Concurring opinion, 395. I cannot disagree more. The law of interpretation of contracts is as binding on courts deciding marital cases as it is on courts hearing corporate cases. See *Issler* v. *Issler*, supra, 250 Conn. 235. If we begin to undermine the application of contract law in family cases, it sets a dangerous precedent, inviting a similar erosion of established contract principles in other areas of the law.

In my view, the approach taken in the majority and concurring opinions will serve to increase the level of uncertainty associated with marital dissolution judgments and decrease the citizenry's confidence in its judiciary. Parties in marital dissolution cases will no longer be assured that our courts are courts of law, bound by predictable and consistently applied precedent. Rather, parties to family cases will be subject to judgments bereft of any guidance from controlling legal

principles. Litigants will understand that if their stipulated judgments must later be litigated, the interpretation and enforceability of such judgments will not be determined according to established tenets of contract law, but instead by the day's idea of what constitutes "the special concerns that arise in the context of family cases . . . ." (Internal quotation marks omitted.) Concurring opinion, 395. The majority's decision will also cause matrimonial attorneys to question the predictability of the settlements they negotiate on behalf of clients if later subjected to judicial scrutiny. To hope that the decision reached today by the majority will have the effect of "conserv[ing] judicial resources and encourage[ing] private resolution of family issues"; majority opinion, 385; is futile. Instead, it will lead to an increase in litigation and less certain outcomes.

## IV

## CONCLUSION

The present case is controlled by immutable principles of contract law. Those principles compel the conclusion that payment of three quarters of $1 million in damages for a twelve day delay in the payment of $7.5 million is a penalty.[11] It should not be enforced because it is in contravention of centuries of binding precedent. Accordingly, I would affirm the judgment of the trial court.

---

[11] This represents an interest rate of 304 percent per annum.